# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

LAZALE ASHBY,

              Plaintiff,

  v.

ANGEL QUIROS, SCOTT SEMPLE,
WILLIAM MULLIGAN, WARDEN
FANEUFF, GREGORIO ROBLES,
CHERYL CAPELAK, AND MONICA
RINALDI,

              Defendants.

3:17-cv-916(CSH)

**May 22, 2018**

## INITIAL REVIEW ORDER

**HAIGHT,** Senior District Judge:

The Plaintiff, Lazale Ashby, is currently incarcerated at Northern Correctional Institution ("Northern"). He has filed a Complaint [Doc. 1] under 42 U.S.C. § 1983 against District Administrator Angel Quiros, Commissioner Scott Semple, Wardens William Mulligan and Faneuff (or "Fane Duff"), Unit Manager Gregorio Robles, and Deputy Commissioners Cheryl Capelak (or Cepelak) and Monica Rinaldi. The Court has subjected the pleading to the mandatory statutory review. For the reasons set forth below, the complaint will be dismissed in part.

## I. STANDARD OF REVIEW

28 U.S.C. § 1915A directs federal district courts to consider all prisoner civil complaints against governmental actors, and dismiss any portion of the complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." § 1915A(b)(1),(2).

1

A district court's *sua sponte* dismissal of a prisoner's complaint under § 1915A is reviewed *de novo* by the court of appeals. Where the district court has dismissed for failure to state a claim, the Second Circuit has said that "we accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. We must reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (citations and internal quotation marks omitted).

At the district court level, the district judge's § 1915A review of whether a complaint "fails to state a claim upon which relief can be granted" is guided by the Federal Rules of Civil Procedure, as interpreted by Supreme Court and Second Circuit decisions whose principles have become familiar. A *pro se* complaint is adequately pleaded if its allegations, liberally construed, could "conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

The Court must accept as true all well-pleaded and non-conclusory factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). It is well-established that *pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). In *Larkin* the Second Circuit took care to say, in the § 1915A context: "We will not affirm the dismissal of a complaint unless it appears

beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts that would entitle him to relief." 318 F.3d at 139 (citation omitted).

The Court will apply the foregoing standards in conducting its initial review of any claims asserted by Ashby. The Court begins with a recitation of the factual allegations contained in the pleading.

## II. FACTUAL ALLEGATIONS

These factual allegations, accepted as true only for the purposes of this Order, are taken from the numbered paragraphs at pages 2-15 of the Complaint [Doc. 1], as well as the Exhibits to that filing.

On March 29, 2010, Plaintiff was confined in a cell on death row at Northern.[1] ¶ 13. On that day Captain Jason Cahill was involved in an altercation with another death row inmate. ¶ 12, Ex. A. Following the altercation, prison officials at Northern imposed a lockdown of the death row unit.

---

[1] On April 25, 2012, Connecticut Governor Dannell Malloy signed into law a statute abolishing the death penalty for all crimes committed on or after that date. *See State v. Santiago*, 318 Conn. 1, 59 (Conn. 2015). At the time of that enactment, a "handful" of inmates remained on Connecticut's death row. *Id.* at 68. In *Santiago*, 318 Conn. 1, the Supreme Court of Connecticut held that, following the 2012 prospective abolition of the death sentence, execution of those offenders remaining on Connecticut's death row would violate the state Constitution. The state Supreme Court affirmed this holding the following year in *State v. Peeler*, 321 Conn. 375 (Conn. 2016), and since that time a number of the remaining death row inmates in Connecticut have been resentenced to life without parole. *See* Compl. ¶¶ 38-39; David Owens, *5th Connecticut Death Row Inmate Resentenced to Life Without Release*, Hartford Courant (Sept. 9, 2016), http://www.courant.com/news/connecticut/hc-webb-resentenced-death -penalty-20160909-story.html. *See also Webb v. Comm'r of Corr.*, 322 Conn. 187, 191 (Conn. 2016) (directing the resentencing of Connecticut death row prisoner Daniel Webb). This opinion will follow the Complaint in referring to Plaintiff and his fellow inmates as "death row prisoners," and to their incarceration unit at Northern as "death row," anachronistic as that may sound in a state which has abolished capital punishment. *See also Frequently Asked Questions*, Conn. Dep't of Corr., http://portal.ct.gov/DOC/Common-Elements/Common-Elements/ Frequently-Asked-Questions-FAQ (last visited May 22, 2018) ("Currently there are 11 adult male inmates awaiting execution on death row at the Northern Correctional Institution in Somers.").

¶ 14. Captain Cahill supervised a strip search of Plaintiff as well as a search of Plaintiff's cell and the confiscation of items of Plaintiff's personal property. ¶ 15.

During the lockdown, prison staff placed Plaintiff on full restraint status. ¶ 16. Under this status, prison officials placed handcuffs, leg shackles and tether chain around Plaintiff's waist every time he left his cell. *Id.* Plaintiff has been on this indefinite restraint status ever since. The new restraint policy was memorialized on April 5, 2010, by Defendant Quiros, who was then Warden of Northern, in a policy recommendation memorandum. *See* Ex. A, "Death Row Restraint Policy Recommendation." The policy requires death row inmates to be placed either in handcuffs, leg shackles and a tether chain or just handcuffs behind their backs every time prison staff escorted them from their cells. Ex. A.

No notice was given, nor was any hearing was held before prison officials imposed the new restraint status on Plaintiff. ¶ 19. That status is indefinite. *Id.* There is no process pursuant to which Plaintiff may challenge the restraint status or be relieved from the status. ¶ 20. After implementation of the restraint policy, prison officials installed "traps" in the doors of the dayrooms in the death row unit to enable officers to remove inmates' handcuffs while the inmates used the dayrooms. ¶ 21.

Prior to the imposition of the new restraint policy, Plaintiff held a job as a tierman/janitor in the death row unit, for which he received "Level Two" pay, or $1.25 per day. ¶¶ 27-29. After the imposition of the restraint policy, he was removed from his tierman position . ¶¶ 27, 29. Plaintiff's tierman job was replaced with "Level One" pay of $0.75 per day. ¶ 30. Defendants continue to provide Plaintiff with Level One pay, for unspecified work responsibilities, because Defendants believe they are required, by Connecticut law, to provide work assignments for death row inmates whose cases remain on direct appeal. ¶ 30. Plaintiff's direct appeal remains pending. ¶ 31.

4

Plaintiff has made verbal and written requests to remedy the restraint policy and employment issues. ¶ 36. He has also filed grievances regarding the change in his job assignment and the imposition of the restraint policy, which grievances have been denied. ¶ 37; Exs. I-L. Death row inmate Joseph Rizzo has been permitted to continue his employment. ¶ 35.

During the seven months prior to the filing of this complaint, the State of Connecticut resentenced two other death row inmates, Russell Peeler, Jr. and Sedgwick Cobb, pursuant to the abolition of the death penalty in Connecticut. ¶¶ 38-39. After resentencing, Peeler and Cobb were no longer subject to the out-of-cell restraint policy. ¶ 38. In addition, prison officials permit Peeler and Cobb to engage in recreational activities for two extra hours a week and to use all of the equipment in the prison gym. ¶¶ 44-47 They are also eligible for prison jobs that pay a higher wage. ¶49.

### III. PLAINTIFF'S CLAIMS FOR RELIEF

Plaintiff contends that the Defendants violated his Eighth Amendment right to freedom from cruel and unusual punishment and his Fourteenth Amendment rights to equal protection and due process, as well as his purported right to employment under C.G.S. § 18-10a, and his right to equal protection under the Connecticut Constitution. He seeks declaratory and injunctive relief and monetary damages.[2]

---

[2] Plaintiff mentions that at the end of March 2010, Captain Cahill and correctional officers searched his cell and confiscated his personal possessions. *See* Compl. ¶ 15. Plaintiff does not otherwise claim that the Defendants were involved in this conduct or that they violated his constitutional rights in connection with the search of his cell and seizure of his personal property. Accordingly, the Court does not construe the complaint as raising a Fourth Amendment search and seizure claim or a Fourteenth Amendment loss of property claim. Even if such claims had been asserted, they would be subject to dismissal as lacking an arguable legal basis. As a prisoner, Plaintiff has no expectation of privacy in his cell and the proscription against unreasonable searches and seizures does not apply. *See Hudson v. Palmer*, 468 U.S. 517, 525-28 & n.8 (1984). Furthermore, the Supreme Court has found that the Due Process Clause of

A. **Eighth Amendment Claim**

Plaintiff alleges that the requirement that he be placed in restraints every time he leaves his cell, and the refusal of prison officials to allow him to work, constitute punishment in violation of the Eighth Amendment bar on cruel and unusual punishment.

The Supreme Court has held that prisoners have no right to be housed in comfortable surroundings. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1980) (harsh or restrictive conditions are part of the penalty criminal offenders pay for their crimes). A prisoner's conditions of confinement, however, must meet "minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This means that prison officials are required to provide for inmates' basic human needs – "e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 200 (1989).

To state an Eighth Amendment conditions of confinement claim, an inmate must establish first, that a prison official denied him "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations and quotation marks omitted). Second, the inmate must show that the official acted with subjective "deliberate indifference to [his] health or safety" because the official knew that the inmate "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id.* at 834, 847 (internal citations and quotation marks omitted).

Plaintiff has not alleged that the requirement that he be placed in handcuffs and leg restraints

---

the Fourteenth Amendment is not violated when a prison inmate loses personal belongings due to the negligent or intentional actions of correction officers if the state provides an adequate post-deprivation compensatory remedy. *See id.* at 533; *Parratt v. Taylor*, 451 U.S. 527, 543 (1981). Connecticut provides a remedy for the deprivation of personal property alleged by Plaintiff. *See* State of Connecticut Department of Correction Administrative Directive 9.6(16) (Aug. 15, 2013); C.G.S. § 4-141 *et seq.*

every time he leaves his cell deprives him of one of life's necessities. He concedes that he is not confined in restraints when he is in his cell or when he spends time in the dayroom. In addition, the notice attached to the complaint regarding the restraint policy states that restraints will be removed when an inmate showers, recreates, engages in social visits and telephone calls and uses the dayroom. *See* Compl., Ex. A.

In conclusory statements on pages of the complaint, Plaintiff asserts that the restraint policy subjects him to "wanton infliction of pain." Compl. ¶¶ 58, 61. These unsupported statements do not state a plausible claim that the restraint policy has compromised Plaintiff's health or safety or otherwise deprived him of his basic human needs. *See Branham v. Meachum*, 77 F.3d 626, 631 (2d Cir. 1996) (affirming dismissal of Eighth Amendment claim regarding plaintiff's placement on full restraint status because condition was not unduly harsh and inmate did not assert facts to suggest that prison officials were deliberately indifferent to his health or safety); *Vallade v. Fischer*, No. 12-CV-231M, 2012 WL 4103864, at *3 (W.D.N.Y. Sept. 13, 2012) ("It is well-established that handcuffing an inmate is a regular incident of prison life which does not *per se* violate the Eighth Amendment."); *Graham v. Fries*, No. 93-CV-3371(JG),1996 WL 1057212, at *11 (E.D.N.Y. Oct. 16, 1996) (citing cases) ("[T]he use of shackles and handcuffs (whether in front or in back) while moving prisoners does not constitute an extreme deprivation.").

Plaintiff also contends that removing him from his prior prison job as a tierman, and refusing to provide him with a genuine job assignment in its place, constitutes a "harsher condition of confinement." Compl. ¶ 33. He claims that his former job served to "stable him[]mentally and also to support him[] financially." *Id.* ¶ 34. As stated above, Plaintiff does not allege that he is required to remain in his cell at all times. Nor has he alleged that his new job has resulted in the denial of a necessity of life.

With regard to the subjective prong of the Eighth Amendment standard, no facts are alleged to suggest that the restraint and job policies imposed by the Defendants constituted a deliberate or intentional disregard of a risk to Plaintiff's health or safety or other basic, human need. *But cf. Sosa v. Lantz*, No. 3:09CV869 JBA, 2013 WL 4441523, at *9 (D. Conn. Aug. 14, 2013) ("[T]he Court recognizes the possibility that, anticipating evolving contemporary standards of decency, an extended term of confinement in a cramped and crowded cell without any opportunity whatsoever for an inmate to advance himself through education, vocational, or rehabilitative programs might come to be viewed as unconstitutional cruel and unusual punishment."). Thus, Plaintiff has not alleged facts to meet the subjective prong. Accordingly, any claims under the Eighth Amendment regarding the out-of-cell restraint policy or Plaintiff's re-assignment to another prison job are dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

**B.    Fourteenth Amendment Equal Protection Claim**

Plaintiff alleges that the Defendants violated his right to equal protection of the laws by permitting similarly situated inmates to work prison jobs and move outside of their cells without restraints. Plaintiff identifies two death row inmates who have been resentenced to terms of life without the possibility of release. He contends that prison officials do not apply the restraint policy to these inmates and have permitted them to be assigned to jobs with a higher rate of pay than the rate of pay for his assigned job.

Where the differential treatment does not discriminate against a protected class, the government must meet only the lenient "rational basis" standard, whereby "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The government must meet the higher "strict scrutiny" standard when it treats individuals differently

based on a suspect or protected class, such as race or national origin. *Id.*

### i. As to out-of-cell restraint policy

As to the out-of-cell restraint policy, Plaintiff alleges facts adequate to state a claim for class-based equal protection violation against the purported class of death row prisoners who have yet to be resentenced. Plaintiff alleges that, solely as a result of their resentencing, Cobb and Peeler have been taken off the death row indefinite restraint policy. Compl. ¶¶ 38-43. In addition to the ability to move amongst prison facilities without the extensive restraint measures applied to Plaintiff, the resentenced inmates are afforded access to recreational facilities that are off limits to Plaintiff and other inmates on indefinite restraint, as well as two extra hours of recreation each week. *Id.* ¶¶ 44-47. The affidavit of death row inmate Todd Joseph Rizzo, attached to the complaint as Exhibit H ("Rizzo Affidavit"), who, to the Court's knowledge, has not been resentenced, asserts that Rizzo has "[f]or approximately these last seven years to date . . . been made to wear restraints at every cell outing until contained by a secure area or room . . . ." Rizzo Aff. at 1. This corroborates Plaintiff's assertion that the application of the indefinite restraint policy is solely dependant on an inmate's status as a death row inmate who has yet to be resentenced.

It is well-established that "[m]erely being a prisoner is insufficient to place [one] in a suspected class." *Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18 (W.D.N.Y. 2010), *aff'd*, 449 F. App'x 51 (2d Cir. 2011) (summary order). Courts have applied rational basis analysis to equal protection claims where prison policies distinguished between non-suspect classes of prisoners. *See, e.g., McGinnis v. Royster*, 410 U.S. 263 (1973) (good-time policy distinguished between inmates held at county jails and those held at state prison); *Hammer v. Ashcroft*, 570 F.3d 798 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1735 (2010) (federal prison media-access policy distinguished between prisoners housed in special confinement unit, most of whom had been sentenced to death,

and other prisoners); *Williams v. Manson*, 499 F.Supp. 773 (D. Conn. 1980) (mail policy distinguished between prisoners making lottery purchases and those making other financial transactions); *Delafonse v. Manson*, 385 F.Supp. 1115 (D. Conn. 1974) (prison pay policy distinguished between prisoners held at psychiatric hospital and those held at other hospitals); *Beatham v. Manson*, 369 F.Supp. 783 (D. Conn. 1973) (seniority pay-scale distinguished between inmates of one correctional institution and those of another).

The class of death row prisoners who have yet to be resentenced, following Connecticut's abolition of the death penalty, is not a protected or suspect class. *See, e.g.*, *Green v. Santiago*, No. 3:16-cv-1724(CSH), 2017 WL 2312355 at *8-9 (D. Conn. May 26, 2017) (class of prisoners with less than twenty-five years remaining on their sentences is not a protected class for equal protection analysis). As noted *supra*, the governing law requires Defendants to demonstrate that the differential application of the indefinite restraint policy is rationally related to a legitimate state interest. At this early stage, there is no evidentiary record on that issue, and the Court intimates no view with respect to it.

### ii. As to employment

As to access to prison employment, Ashby does not state a plausible claim for a class-based equal protection violation against the purported class of death row prisoners who have yet to be resentenced. The Complaint references death row inmate Rizzo, who currently has a job as a librarian book cart clerk. Compl. ¶ 35, Rizzo Aff.. Neither Plaintiff, nor Rizzo in his Affidavit represent that Rizzo has been resentenced. Rizzo formerly held a job as a tierman. Rizzo Aff. at 1. Pursuant to the out-of-cell restraint policy implemented in April 2010, Inmate Rizzo has been required to wear restraints every time he leaves his cell. *Id.* In 2013, prison officials assigned Inmate Rizzo to the job of librarian book cart clerk. *Id.* He performs his job in a unit dayroom and

makes more money than he did as a tierman. *Id.* at 1-2. Where both resentenced former death row inmates (Peeler and Cobb) and an inmate still awaiting resentencing (Rizzo) have been afforded the employment Plaintiff claims to have been denied, there is no plausible claim that the alleged denial is based on Plaintiff's membership in the class of death row inmates awaiting resentencing.

In addition to stating a class-based claim, a plaintiff may also state an equal protection violation under the "class of one" theory. *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). Under this theory, a plaintiff must allege that "she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* The plaintiff must allege an "extremely high degree of similarity" with the person to whom he is comparing himself. *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). "Generally, whether parties are similarly situated is a fact-intensive inquiry." *Id.* (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n. 2 (2d Cir. 2001).

To the Court's knowledge, neither Plaintiff nor his fellow death row inmate Rizzo has been resentenced. Plaintiff alleges that Rizzo is allowed to work, whereas he is not. Compl. ¶ 35. The Rizzo Affidavit, dated April 13, 2017, states:

> In March 2010 . . . I had my job taken from me when every man on my status was immediately . . . restricted in movement by being clapped in irons. . . . In October 2013 I assumed the role of bookcart clerk and have been so employed to date. My job title refers to librarian duties in a small book depository . . . . Within this secure area I am unrestrained . . . permitted to move about said room keeping stored/shelved books in order and book carts stocked . . . . I earn a higher pay from a tierman for conducting daily work which temporarily 'frees' me from the confines of a prison cell, unlike others on my status. I can better afford basic necessities from the commissary . . . . There has developed a somewhat liberating feeling in the mind from enjoyed mobility even in a virtually cavernous cell, and once being more productive. While I am still restricted to a locked room of Plexiglass, the time spent out of my prison cell has

> – to a degree – improved my mental health which had been deteriorating in solitary.

Rizzo Aff.

Another exhibit to the complaint shows that the assignment of death row inmates to prison jobs after the implementation of the restraint policy in 2010 is discretionary and based on the needs of the unit. *See* Ex. C, "Death Row Job Assignments." Discretionary decisions regarding the employment of inmates are not generally subject to class-of-one equal protection challenges. *See, e.g., Diaz v. Pelo*, No. 9:15-CV-0776(DNH/DJS), 2017 WL 1380756, at *8 (N.D.N.Y. Mar. 24, 2017) (reduction of plaintiff's wage grade is a "subjective and individualized" employment decision and therefore not a basis for class-of-one equal protection claim), *report and recommendation adopted*, No. 9:15-cv-776(DNH/DJS), 2017 WL 1379375 (N.D.N.Y. Apr. 17, 2017); *Johnson v. Pallito*, No. 2:12-cv-138, 2014 WL 2000369, at *2-3 (D. Vt. Apr. 21, 2014), (inmate's claim that he was fired from prison job for not meeting a job pre-requisite while other inmates had previously been hired despite not meeting same job pre-requisite failed to state class-of-one equal protection claim because termination involved discretionary authority or decision-making) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008)), *report and recommendation adopted*, No. 2:12 CV 138, 2014 WL 1922728, at *3 (D. Vt. May 14, 2014).

The apparently discretionary nature of death row job assignments, combined with Rizzo's representation that he was denied out-of-cell employment between March 2010 and October 2013, indicate that employment distinctions between similarly-situated death row inmates may be entirely discretionary and beyond the reach of a class-of-one equal protection claim. However, Plaintiff's allegation, made at paragraphs 29 and 30, that he has been paid at "Level One" for more than seven years, without any job assignment, for the sole purpose of insulating the Defendants from legal

liability for violating his rights under state law, does give rise to the reasonable inference that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook,* 528 U.S. at 564.

As to Plaintiff's employment status, the Court finds that Plaintiff has asserted facts sufficient to state a claim for an equal protection violation on a class-of-one theory. Judge Meyer of this District recently held that a *pro se* prisoner's class-of-one equal protection claim for being denied a job as a prison tutor could proceed against prison officials in *Dehaney v. Chagnon*, No. 3:17-CV-00308 (JAM), 2017 WL 2661624 (D. Conn. June 20, 2017). There, the"[p]laintiff contend[ed] that defendants treated him differently than other similarly situated inmates who were tutors and were assigned to new tutoring jobs when their original jobs were eliminated." *Id.* at *4. I follow Judge Meyer's example in cautioning that, while Plaintiff has met the pleading standard, "in order to prevail on this claim, plaintiff will ultimately be required to 'show an extremely high degree of similarity' between himself and the individuals he alleges are similarly situated." *Id.* (quoting *Clubside*, 468 F.3d at 159).

For the reasons set forth above, Plaintiff's Fourteenth Amendment equal protection claims as to the out-of-cell restraint policy (as to the non-suspect class of Connecticut death row inmates who have not yet been resentenced) and as to lack of employment (on a class-of-one theory) will proceed against the Defendants in their individual and official capacities.[3]

---

[3] Plaintiff seeks both damages and injunctive relief. Compl. 18-20. To the extent that the Plaintiff seeks damages from the defendants in their official capacities, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). If a suit against a state official in his or her official capacity seeks money damages, the state is deemed the real party in interest, and is thus entitled to Eleventh Amendment immunity, as any damages awarded would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994); *Minotti v. Lensink*, 798 F.2d 607,

## C.     Fourteenth Amendment Due Process Claims

To establish a procedural due process claim, a plaintiff must show that (1) he possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Field*, 280 F.3d 69, 79-80 (2d Cir. 2000). "Liberty interest[s] may arise from the Constitution itself . . . or [they] may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 219, 221 (2005) (citations omitted).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court reexamined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." *Id.* at 474. The Court explained that in the prison setting, liberty interests protected by Due Process will be "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 485. The Court concluded that Inmate Connor's conditions of confinement in disciplinary/punitive segregation for thirty days did not present the type of atypical, significant deprivation in which a State might create a liberty interest. Thus, Inmate Connor was not entitled to procedural due process protections prior to his placement in punitive segregation. In *Wilkinson*, the Supreme Court made clear that the "touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding

---

609 (2d Cir. 1986). The Eleventh Amendment bar does not extend to claims for injunctive relief from state officers. "Under the well-known exception to this rule first set forth in *Ex parte Young*, 209 U.S. 123 (1908) . . . a plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks omitted) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)). Nor does the Eleventh Amendment bar suits for damages against state employees named in their individual capacity. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Because Plaintiff seeks both damages and injunctive relief, all of his claims which survive this review order may go forward against the named Defendants in both their official and individual capacities.

restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484).

### i. As to out-of-cell restraint policy

Here, Plaintiff alleges that at the end of March 2010, the Defendants issued an order that he be placed on out-of-cell restraint status indefinitely due to the actions of another inmate. This status requires that he wear handcuffs, leg shackles and a tether chain around his waist every time he leaves his cell. Prior to March 2010, he was not required to be restrained in this manner when he left his cell. He claims that the Defendants did not provide him with any procedural protections prior to his placement on the restraint status. Nor, he alleges, have they set forth any process by which he might be relieved from the restraint status. Thus, he has remained on out-of-cell restraint status for over seven years prior to filing this action.

Given the duration of Plaintiff's placement on restraint status and the fact that the placement seems to be indefinite, the court concludes that Plaintiff has stated a plausible claim that he possessed a Fourteenth Amendment liberty interest in being free of out-of-cell restraints and the Defendants failed to provide him with procedural due process in connection with his initial and continued placement on out-of-cell restraint status. *See Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (factors to be considered in determining whether inmate suffered an atypical and significant hardship include "the duration of the" restrictive condition of confinement and "the extent to which the condition[] . . . differ[s] from other routine prison conditions") (internal quotation marks and citation omitted); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (inmate's confinement in Segregation Housing Unit "conditions for 305 days in our judgment is sufficient departure from the

ordinary incidents of prison life to require procedural due process protections under *Sandin*").  The Fourteenth Amendment due process claim as to confinement/out-of-cell restraint will proceed against the Defendants in their individual and official capacities.

**ii. As to employment**

Plaintiff alleges that prison officials denied him a job after the implementation of the restraint policy in 2010, and that, further, they attempted to conceal this denial by providing him with Level One pay.  *See* Compl. ¶¶ 27-30.

"[T]he Constitution of the United States does not create a property or liberty interest in prison employment. Therefore, any such interest must be created by state law by language of an unmistakably mandatory character." *Richard v. Fischer*, 38 F. Supp. 3d 340, 352 (W.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) and collecting cases).  *See also Johnson v. Rowley*, 569 F. 3d 40, 44 (2d Cir. 2009); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (collecting federal appeals court cases); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (no constitutional right to a job in the absence of underlying state law mandating jobs for prisoners); *Manley v. Bronson*, 657 F. Supp. 832 (D. Conn. 1987); *Banks v. Norton*, 346 F. Supp. 917, 921 (D. Conn. 1972) (noting that an inmate has no right to a particular job in a correctional institution); *Santiago v. Comm'r of Corr.*, 39 Conn. App. 674, 680 (Conn. App. Ct.1995) (inmates have "no property or liberty interest in prison employment"); State of Conn. Dep't of Corr. Admin. Directive 10.1(4)A ("[n]o inmate shall have entitlement or a legitimate expectation to any work, programmatic or educational assignment or compensation therefor," with certain exceptions not here relevant).

"States  may under certain circumstances create liberty interests which are protected by the

Due Process Clause." *Sandin*, 515 U.S. at 483-84. Statutory or regulatory "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed" can create such a protected interest. *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983). Thus, two elements are required to establish a protected liberty interest[4] in prison employment, entitled to Due Process Clause protection: (1) a state statute or regulation, in "language of an unmistakably mandatory character"; and (2) evidence that the deprivation of employment, in violation of that statute or regulation, "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hewitt*, 459 U.S. at 471; *Sandin*, 515 U.S. at 484.

As to the first element, Plaintiff cites C.G.S. § 18-10a, "Employment of prisoners under death sentence", which he contends establishes a protected liberty or property interest in continued employment. That statute reads, in its entirety,

> The Commissioner of Correction shall provide for the employment and utilization of prisoners under sentence of death whose convictions are being appealed. Nothing in this section shall be construed so as to diminish security precautions for such prisoners, or to require commingling with other prisoners, or to require daily employment.

C.G.S. § 18-10a. The mandatory language "shall provide" is of the type that may create a constitutionally protected interest. *See Hewitt*, 459 U.S. at 471-72. Accepting all of Plaintiff's

---

[4] Prisoners' protected property interests are not subject to the additional scrutiny of *Sandin*, which dealt with liberty interests. *See Handberry v. Thompson*, 446 F. 3d 335, 353 n. 6 (2d Cir. 2006). However, courts are in near universal agreement that prisoners have no protected interest in any particular job. *See, e.g. Johnson v. Rowley*, 569 F. 3d 40, 44 (2d. Cir 2009). *See generally* § 8:6 "The right to a particular job," 2 *Rights of Prisoners* § 8:6 (5th ed. 2017). Considering the specifics of Plaintiff's pleadings against that precedential backdrop, the Court finds that, if Plaintiff has any due process protected interest in prison employment, it is a liberty interest, and not a property interest.

factual allegations as true for the purposes of this Order, the remaining question is whether revocation of Plaintiff's prior employment status "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484.

Federal courts have found that Colorado and New Hampshire statutes created protected liberty interests in prison employment. *See Ramos v. Lamm*, 485 F. Supp. 122, 157 (D. Colo. 1979), *aff'd in part, set aside in part on other grounds*, 639 F.2d 559 (10th Cir. 1980); *Laaman v. Helgemoe,* 437 F. Supp. 269, 318 (D.N.H. 1977). *But see Rowe v. Fauver*, 533 F. Supp. 1239, 1243-44 (D.N.J. 1982) (mandatory statutory language does not confer a liberty interest in prison employment, where New Jersey courts have interpreted that language to allow for wide discretion). Notably, the cited Colorado and New Hampshire district court decisions predate *Sandin*, and therefore do not address the second element now required to establish a state-created due process protection for inmates, whether the deprivation of the right established by statute or regulation imposes an "atypical and significant hardship". 515 U.S. at 484.

The question of atypicality under *Sandin* is "a fact-intensive inquiry." *Taylor v. Rodriguez*, 238 F.3d 188, 196 (2d Cir. 2001). In the Second Circuit, the general comparator for establishing "atypical and significant hardship" is the general prison population, including those held in segregation as part of the ordinary course of prison administration. *Welch v. Bartlett*,196 F.3d 389, 393 (2d Cir. 1999). To resolve the question of whether Plaintiff's alleged lack of employment meets the atypicality requirement of *Sandin* will require analysis of facts within the control of Defendants' employer, the Department of Corrections.

For the foregoing reasons, I conclude that, read with the special solicitude due to a *pro se* litigant, Plaintiff's allegations that he was deprived of a state-created liberty interest in continued

employment could "conceivably give rise to a viable claim." *Phillips*, 408 F.3d at 130. The Fourteenth Amendment due process claim as to lack of employment will proceed against the Defendants in their individual and official capacities.

### D. Claims under the Connecticut Constitution

Plaintiff contends that the Defendants violated his rights under Article First, § 20 of the Connecticut Constitution. Article First, § 20, as amended by article twenty-one of the amendments, provides that: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Conn. Const. art. 1, § 20.

Research has revealed no cases in which a state court in Connecticut has recognized a private right of action under Article First, § 20. *See e.g., Minto v. Dep't of Mental Health & Addiction Servs.*, No. HHDCV176076730S, 2018 WL 710124, at *9 (Conn. Super. Ct. Jan. 11, 2018) ("Connecticut courts have unanimously declined to recognize a private cause of action under article first, § 20"); *Massey v. Town of Branford,* No. X10 NNH CV 04-048778, 2006 WL 1000309, at *6-7, (Conn. Super. Ct. March 28, 2006) (granting motion to strike count that alleged violation of Article First, § 20 because the provision did not provide a direct cause of action for damages.); *Wylie v. W. Haven*, No. CV065006403, 2010 WL 2196493, at *2-3 (Conn. Super. Ct. Apr. 21, 2010) (no private right of action under Article First § 20). Furthermore, federal judges in this district have previously declined to create a remedy under Article First, § 20 of the Connecticut Constitution. *See Groomes v. Corr. Officer Frazir*, No. 3:17cv1072(JCH), 2017 WL 7410991, at *8 (D. Conn. Nov.

2, 2017); *Crowley v. Town of Enfield*, No. 3:14cv01903 (MPS), 2015 WL 4162435, at *3 (D. Conn. July 9, 2015); *Johnson v. State Dep't of Children & Families*, No. 3:11cv996(WWE), 2012 WL 6049583, at *5 (D. Conn. Dec. 5, 2012) ("Court will join numerous courts that have declined to recognize a private right of action pursuant to Article First, § 20"); *Marshall v. Town of Middlefield*, No. 3:10 cv 1009 (JCH), 2012 WL 601783, at *9 (D. Conn. Feb. 23, 2012); *Silvera v. Conn. Dep't of Corr.*, 726 F. Supp. 2d 183, 199 (D. Conn. 2010) (Kravitz, J.). Accordingly, the claims asserted pursuant to Article First, § 20 of the Connecticut Constitution are dismissed for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915A(b)(1).

## IV. ANTICIPATED CONSOLIDATION

Plaintiff's Complaint shares many issue of fact and law with a complaint filed in a separate matter before this Court, *Campbell v. Quiros et al.*, 17-cv-1946. For the reasons explained in a consolidation order to be filed separately, I have made a *sua sponte* determination under Federal Rule of Civil Procedure 42(a) that consolidation of these two actions is appropriate.

At the time the complaints in these two matters were filed, both Ashby and the plaintiff in 17-cv-946, Jesse Campbell III ("Campbell"), were serving under sentences of death and had yet to be resentenced. On April 18, 2018, Campbell was resentenced to life in prison, without the possibility of release, by Superior Court Judge Edward J. Mullarkey. *See, e.g.,* Nicholas Rondinone, *Death Row Inmate Jessie Campbell Resentenced to Life in Prison Without Possibility of Release*, Hartford Courant, Apr. 18, 2018. Following briefing on the impact of this intervening event on Campbell's pending claims, I determined that Campbell's resentencing mooted two aspects of his claims before this court: 1) his Fourteenth Amendment due process claim as to the *continued* application of the out-of-cell restraint policy on his person; and 2) his Fourteenth Amendment equal

protection claim as to the imposition of the out-of-cell restraint policy on the class of death row prisoners who have yet to be resentenced. *See* 17-cv-946, Doc. 31. Because Campbell no longer has standing to bring those two claims, my IRO in his case has been amended to omit the mooted claims.

I discuss this development here because the Court reasonably anticipates that, in due course of time, Ashby will also be resentenced, and some part of his claims, allowed to proceed by this Order, may likewise be mooted. That eventuality may happen in days, weeks, months, or even years, and it seems inevitable that eventually the class of Connecticut death row inmates who have yet to be resentenced will be finally extinguished.

### V. CONCLUSION

In accordance with the foregoing analysis, the court enters the following orders:

(1)     The Eighth Amendment claims and the claim pursuant to article First, § 20 of the Connecticut Constitution are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Fourteenth Amendment equal protection claims as to the imposition of the out-of-cell restraint policy on the class of death row prisoners who have yet to be resentenced, and as to Plaintiff's lack of employment on a class-of-one theory, as well as the Fourteenth Amendment due process claim related to the initial imposition of an out-of-cell restraint policy on Plaintiff and the continued imposition of that policy on Plaintiff, and the loss of Plaintiff's job and continued denial of employment to Plaintiff, will proceed against the Defendants in their individual and official capacities.

(2)     Within twenty-one (21) days of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on the Defendants in their

official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     Within twenty-one (21) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for  District Administrator Angel Quiros, Commissioner Scott Semple, Warden William Mulligan, Warden Faneuff (or "Fane Duff"), Unit Manager Gregorio Robles, Deputy Commissioner Cheryl Capelak (or "Cepelak"), and Deputy Commissioner Monica Rinaldi  and mail a copy of the Complaint, this Order and a waiver of service of process request packet to each Defendant in his individual capacity at his current work address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)     The Pro Se Prisoner Litigation Office shall send a courtesy copy of the complaint and

this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

It is SO ORDERED.


Dated: New Haven, Connecticut
        May 22, 2018



                                        _/s/ Charles S. Haight, Jr._____
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge