# EXHIBIT 4

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

LAZALE ASHBY                   :       CIVIL NO. 3:17-CV-916(CSH)

       v.                           :

ANGEL QUIROS, ET AL.          :       AUGUST 28, 2019

### <u>DECLARATION OF COUNSELOR SUPERVISOR BONAVENTURA</u>

Undersigned hereby declares:

1. I am a Correctional Counselor Supervisor in the Connecticut Department of Correction (DOC), Office of Standards and Policy.

2. I my capacity as a Counselor Supervisor in the Office of Standards and Policy my duties include the maintenance of the current Administrative Directives as well as the historical archive of the Administrative Directives and I am the keeper of the record of same. Part of my employment related duties include the maintenance, revision, and interpretation of the Administrative Directives (AD) of DOC.

3. Attached hereto as Exhibit A is a copy of Administrative Directive 10.1 in effect from June 30, 2009 until October 22, 2015.

4. Attached hereto as Exhibit B is a copy of Administrative Directive 10.1 in effect since October 22, 2015.

5. A.D. 10.1.4.B provides that "each Unit Administrator shall develop an Annual Pay Plan for all non-industries work." It further provides that this plan must be approved by the Deputy Commissioner of Operations and Rehabilitative Services

in consultation with the Deputy Commissioner of Administration. See Exhibit B, pg.

6. Additionally, under A.D. 10.1.4.B, all pay plans "shall conform to the skill/pay levels and rates established in Attachment A, Inmate Pay Plan Matrix and identify the projected assignments required by: 1. assignment area; 2. assignment description in accordance to Attachment A, Inmate Pay Plan Matrix; 3. location; 4. Syscon work code; 5. Syscon work type; 6. number of slots for each assignment; 7. custody level for each slot within the assignment; 8. pay level; and, 9. designation as a five- or seven-day work assignment."

7. A.D. 10.1.8 provides that any exceptions to the procedures set forth in the Administrative Directive requires "prior written approval from the Commissioner."

8. The pay matrix for Janitor, also known as Tierman, is $.75 cents per day, and for Barber, is $1.75 per day.

9. Both Exhibit A and Exhibit B provide the same as to all relevant provisions.

10. The Inmate Pay Matrix remained unchanged as to Janitor and Barber in Exhibits A and B.

11. A Unit Directive cannot change the provisions of A.D. 10.1.4.B without approval of the Deputy Commissioner of Operations and Rehabilitative Services. The Pay Plan Matrix cannot be changed without the approval of the Commissioner.

12. The Unit Directive attached to the Plaintiffs' Complaint that purports to change pay plan to death row inmates was never approved by the Deputy Commissioner of Operations and Rehabilitative Services and had no effect.

2

13. Administrative Directive 9.4, restrictive status, underwent a number of revisions in 2010.

14. Attached hereto as Exhibit C is a copy of A.D. 9.4 effective on January 1, 2010. On January 14, 2010, a revision to A.D. 9.4 was approved. Attached hereto as Exhibit D is a copy of a request for inclusion or revision to A.D. 9.4, approved on January 14, 2010.

15. Pursuant to the January 14, 2010 A.D., inmates on the restrictive status of Administrative Segregation phase one, during "movement out of cell or out of secured area" were "prior to release from a cell, at a minimum handcuffed behind the back and in leg irons except when making phone calls at which time the inmate" would be "handcuffed in the front with leg irons and a tether chain before leaving the cell." Such restraints could only be removed when the inmate were "in a secure shower or secure individual recreation areas." This is set forth under the "provisions and management standards" for restrictive statuses. See Ex. D, Pg. 2.

16. On July 7, 2010, a revision to A.D. 9.4 was approved. Attached hereto as Exhibit E is a copy of a request for inclusion or revision to A.D. 9.4, approved on July 7, 2010.

17. The July 7, 2010 revisions included a change to the provisions and management standards for Administrative Segregation phase one. Pursuant to this revision, inmates on the restrictive status of Administrative Segregation, Phase One, during "movement out of cell or out of secured area" were, "prior to release from a cell, at a minimum handcuffed behind the back except when making phone

3

calls at which time the inmate" would be "handcuffed in the front." However, the revision provided that "leg irons and tether chain" could still be used "at the discretion of the Unit Administrator." See Ex. E, pg. 4.

18. Additionally, the July 7, 2010 revision no longer authorized use of leg irons on inmates on Administrative Segregation, Phase One, when moving "out of cell or out of secured area within housing unit." See Ex. E, Pg. 4.

19. On July 20, 2010, a revision to A.D. 9.4 was approved. Attached hereto as Exhibit F is a copy of a request for inclusion or revision to A.D. 9.4, approved on July 20, 2010.

20. Pursuant to the July 20, 2010 revision, inmates on Administrative Segregation, Phase One, when moving "out of cell or out of secured area within housing unit" were required to be handcuffed behind the back, and use of "leg irons and tether chains" was permitted "at Northern CI, York CI, Garner CI, and Manson YI when authorized by the Unit Administrator." See Ex. F, pg. 2.

21. Additionally, pursuant to the July 20, 2010 revision, "leg irons and tether chains" could be used at the discretion of the Unit Administrator for inmates on Administrative Segregation, Phase One, during movement "out of cell or out of secured area when on restraint status" both when the inmate was handcuffed behind the back or when the inmate was handcuffed in front. See Ex. F, Pg. 2.

22. The version of A.D. 9.4 approved on July 20, 2010 remained in effect until additional revisions were made to other portions of the directive in November of 2015.

23.    The July 7, 2010 revision eliminated authorization for use of leg irons for inmates on Administrative Segregation, Phase One, during movement "out of cell or out of secured area within housing unit." See Ex. E, Pg. 4.

24.    However, the July 20, 2010 revision reinstated use of leg irons for inmates on Administrative Segregation, Phase One, during movement "out of cell or out of secured area within housing unit," at the discretion of the Unit Administrator. See Ex. F, Pg. 2.

25.    Similarly, the July 20, 2010 revision clarified that inmates on Administrative Segregation, Phase One, during movement "out of cell or out of secured area when on restraint status" could be secured using leg irons and a tether chain both when handcuffed in front or in back, at the discretion of the Unit Administrator at particular facilities. Ex. F, pg. 2.

26.    All of the aforementioned revisions to A.D. 9.4 were approved by the Office of Standards and Policy, the Division Administrator, and the Commissioner of Correction, then Brian Murphy.

I declare, pursuant to 28 U.S.C. sec. 1746, under penalty of perjury, that the foregoing declaration is true and accurate.

Executed on August _26_, 2019.                    CS B_____

                                                   Counselor Supervisor Bonaventura

# EXHIBIT A

| | State of Connecticut Department of Correction | Directive Number 10.1 | Effective Date 6/30/2009 | Page 1 of 6 |
|---|---|---|---|---|
| | **ADMINISTRATIVE DIRECTIVE** | Supersedes Inmate Assignment and Pay Plan, dated 7/1/2002 | | |
| Approved By *Theresa C Lantz* | | Title Inmate Assignment and Pay Plan | | |

1. <u>Policy</u>. The Department of Correction shall provide inmates with work, programmatic or educational opportunities.

2. <u>Authority and Reference</u>.

   A. Code of Federal Regulations, 29 CFR Part 1630, Americans with Disabilities Act of 1990.

   B. Connecticut General Statutes, Sections 10-17f, 10-69, 18-81, 18-85, 18-85a, 18-88 and 18-90a.

   C. Administrative Directives 4.2, Sentence Computation and Timekeeping; 4.6, Use of Computers and Related Technologies; 6.6, Reporting of Incidents; 9.2, Offender Classification; 9.5, Code of Penal Discipline; 9.8, Furloughs; 10.7, Inmate Communications; and 10.19, Americans with Disabilities Act.

   D. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standard 2-CO-5A-01.

   E. American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003, Standards 4-4182, 4-4212, 4-4215, 4-4337, 4-4448 through 4-4452 and 4-4461.

   F. American Correctional Association, Performance-Based Standards for Adult Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-2A-09, 4-ALDF-4B-03, 4-ALDF-5C-06 through 4-ALDF-5C-12.

3. <u>Definitions</u>. For the purposes stated herein, the following definitions apply:

   A. <u>Annual Pay Plan</u>. An annual operational plan for each non-industrial assignment.

   B. <u>Inmate Assignment</u>. A specific inmate work, programmatic or educational assignment.

   C. <u>School Year</u>. Each school year shall begin on July 1st and conclude on June 30th of the following year.

   D. <u>Seven-Day Work Credit</u>. A time credit of one (1) day for each seven consecutive days a sentenced inmate works at an assignment designated as a seven-day work assignment. Only inmates who were sentenced for an offense committed prior to October 1, 1994 are eligible for Seven-Day Work Credit.

4. <u>Organization and Development of all Inmate Work</u>.

   A. <u>Assignment Requirement</u>. No inmate shall have entitlement or a legitimate expectation to any work, programmatic or educational assignment or compensation therefor, except as provided for under federal and/or state law regarding: a) an inmate under the age of 21 who is in need of special education services according to the Individuals with Disabilities Education Act, b) any inmate under twenty one who has not earned a high school diploma or equivalent, and c) persons through the school year of their 21st birthday who are dominant in a foreign language.

   With the exception of inmates assigned to the Private Sector Prison Industry Enhancement Certification Program (PSPIEC), which shall be

| Directive Number 10.1 | Effective Date 6/30/2009 | Page 2 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

voluntary, a sentenced inmate shall not be allowed to refuse or
reject any inmate assignment. Such refusal may subject the inmate to
disciplinary action as specified in Administrative Directive 9.5,
Code of Penal Discipline. A sentenced inmate who is disciplined for
refusing a programmatic, work or educational assignment may be:

1. denied privileges in accordance with Administrative Directive
   9.5, Code of Penal Discipline;
2. precluded from a classification reduction; and,
3. precluded from consideration for participation in a community
   release program in accordance with Administrative Directives
   9.2, Offender Classification and 9.8, Furloughs.

No unsentenced inmate shall be required to take a work assignment
except to perform housekeeping activities or as a disciplinary
sanction in accordance with Administrative Directive 9.5, Code of
Penal Discipline. An unsentenced inmate may elect to take a work
assignment and in such cases shall be compensated in accordance with
this Directive.

B. Annual Pay Plan. Prior to June 1 annually, each Unit Administrator
shall develop an Annual Pay Plan for all non-industries work,
education and Tier IV program assignments within the facility. This
plan shall be submitted to the Deputy Commissioner of Operations in
consultation with the Deputy Commissioner of Administration for
approval. Each pay plan shall conform to the skill/pay levels and
rates established in Attachment A, Inmate Pay Plan Matrix and
identify the projected assignments required by:

1. assignment area;
2. assignment description in accordance to Attachment A, Inmate
   Pay Plan Matrix;
3. location;
4. Syscon work code;
5. Syscon work type;
6. number of slots for each assignment;
7. custody level for each slot within the assignment;
8. pay level; and,
9. designation as a five- or seven-day work assignment.

C. Selection of Inmate Participants. Consistent with the approved
Annual Pay Plan, a principal/educational administrator, supervisor
or manager shall inform the appropriate facility classification
staff of current or anticipated inmate assignment requirements and
vacancies. Any inmate assignment shall require prior approval by the
facility's classification committee. Inmates shall be required to
submit a written request for a school or work assignment to the
appropriate area as governed at each facility. Facility
classification staff shall provide an opportunity for input from the
principal/educational administrator, supervisor or manager
accordingly, prior to assignment. An inmate may be required to
complete a health screening before placement in an inmate
assignment. Inmates who qualify may then be interviewed by the
respective supervisor or manager. Once approved, the request shall
be sent to the classification committee for assignment.

| Directive Number 10.1 | Effective Date 6/30/2009 | Page 3 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

All assignments shall be made through the classification process. Selection shall take into account the following:

1. a provision for reasonable accommodations for assignment of handicapped inmates in accordance with Administrative Directive 10.19, Americans with Disabilities Act;
2. not discriminate against an inmate for reasons of age, race, religion, national origin, gender, or sexual orientation;
3. racial/ethnic diversity in the assignment of inmates to work/program assignments and pay; and,
4. safety and security concerns.

All inmate housing locations and classification assignments shall be logged on the RT-90U, Inmate Housing and Classification Assignment screen.

D. <u>Selection Priority</u>. The following inmates shall be given priority for facility or district inmate assignments:

1. inmates who possess a high school diploma or GED; or,
2. inmates who are on a waiting list for school.

Inmates may be exempt from the criteria listed above for significant reasons upon approval of the Unit Administrator or designee. Significant reasons shall include special education, age, sentence, medical/mental health, or other reasons as determined by the Unit Administrator or designee.

E. <u>Training</u>. Once hired/selected, an inmate may be required to complete a training program developed by the Unit Administrator or designee. Upon completion, the inmate shall sign to acknowledge receiving such training. The inmate shall continue to receive training as necessary once in the assignment and shall be supervised in a manner to promote successful performance.

5. <u>General Assignment and Pay</u>.

A. <u>Inmate Status as a Non-Employee</u>. Under no circumstances shall an inmate with an inmate assignment be considered an employee of the Department of Correction and/or the State of Connecticut.

B. <u>Work Rules and Conditions</u>. Each inmate shall report to the place of the inmate assignment at the required start time and shall not leave an inmate assignment without permission. Each inmate, regardless of inmate assignment, shall complete all assigned tasks diligently and conscientiously. Refusal to work, avoidance of assigned tasks, failure to complete assigned tasks or meet performance standards, or encouraging others to refuse to participate may result in a poor work evaluation, disciplinary action and/or dismissal from the inmate assignment. No inmate shall be assigned to any position which allows:

1. access to any institutional or personal data regarding staff;
2. access to data regarding inmate housing, assignment, schedules, time and/or attendance records, pay, evaluations, addresses, telephone numbers, property, financial resources, visitors, social security numbers or any other personal information regarding another inmate;

| Directive Number 10.1 | Effective Date 6/30/2009 | Page 4 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

      3.    access to sensitive facility management information; and,
      4.    supervision, control or authority of any kind over another
          inmate.

C.    <u>Inmate Use of Telephones</u>. No inmate shall be allowed to use a telephone for personal or state use except as provided in Administrative Directive 10.7, Inmate Communications. Inmates shall not be left unsupervised in an area with an operable non-collect-call-only telephone. Any telephone in an area accessible to inmates shall be locked with a telephone lock or properly secured when staff are not present.

D.    <u>Inmate Use of Computers</u>. Inmate use of computers shall be in accordance with Administrative Directive 4.6, Use of Computers and Related Technologies. Inmates shall not be allowed to use a computer for any purpose except as specifically required by an educational, work or industries assignment. Inmates shall not use any computer that is connected to a network of any kind, with the exception of the following:

      1.    education and industry computers that are linked by a closed
          network hub that shall not provide Internet access;
      2.    programmatic computers that are linked to a network for use by
          inmates through the authorized facility job centers allowing
          access to the Department of Labor's website only; and,
      3.    programmatic computers that are linked to a network for use by
          inmates on community supervision in order to perform
          programmatic functions.

Such permission shall be in writing and shall cite the limits of authorization as a condition of supervision.

All inmate access to computers shall be closely monitored and limited to departmental assignments and duties.

E.    <u>Safety and Health Procedures</u>. Each correctional employee and inmate shall observe all applicable federal and state safety and health regulations. The Unit Administrator shall ensure that appropriate safety and protective equipment is provided for each assignment and that each inmate is trained in the safe and proper use and operation of any equipment. This shall also apply to the use and handling of any tool, chemical, hazardous material, or waste related to the assignment.

Each inmate shall immediately report any injury to a supervisor. Medical attention shall be provided as necessary and shall be reported in accordance with Administrative Directive 6.6, Reporting of Incidents.

F.    <u>Assignment Day</u>. A standard assignment shall normally be a full day. The standard inmate assignment hours may be extended, without additional pay, by authorization of the Unit Administrator.

G.    <u>No Participation, No Pay</u>. An inmate shall only be paid a single day's pay for actual participation in an assignment to which he/she is classified, as indicated in Section 5(F) of this Directive, during a 24-hour period. The "No Participation, No Pay" standard shall normally apply to each inmate affected regardless of reason (e.g., facility lockdown, court appearance, off-ground trips, etc.).

| Directive Number 10.1 | Effective Date 6/30/2009 | Page 5 of 6 |
| --- | --- | --- |
| Title | Inmate Assignment and Pay Plan | |

H.   **Five- and Seven-Day a Week Work Assignments**. Each inmate assignment shall be designated as a five- or seven-day a week work assignment in accordance with the Annual Pay Plan. This standard shall not apply to inmate assignments that receive pay per incident (e.g., blood spill cleaner, etc.).

For those inmates who are eligible for Seven-Day Work Credit, they must actually work seven consecutive days in order to obtain such credit in accordance with Section 3(D) of this Directive and Administrative Directive 4.2, Sentence Computation and Timekeeping.

I.   **Inmate Performance Evaluation**. An inmate shall receive a written performance evaluation, utilizing CN 100101, Inmate Performance Evaluation Form after 30 days in a new or promotional assignment and at least semi-annually thereafter and at such other times as deemed appropriate. A copy of this evaluation shall be placed in the inmate's institutional file. An overall poor evaluation shall result in a counseling session with the inmate and may result in a referral to the classification committee for possible dismissal or reassignment. The inmate shall receive a copy of each written evaluation.

J.   **Removal or Dismissal**. Dismissal for failure to perform, or for a chargeable infraction, may be accompanied by a disciplinary charge in accordance with Administrative Directive 9.5, Code of Penal Discipline. A finding of guilty shall not be required for removal or dismissal to occur. Removal for other purposes shall not require disciplinary action. A charge shall not be required when it is determined the inmate is incapable of performing to acceptable standards except that an inmate performance evaluation shall be completed and the inmate shall be considered for an alternate assignment.

K.   **Pay Period**. Based on a facility's Annual Pay Plan an inmate shall be paid on a bi-weekly basis in accordance with Section 6 of this Directive.

6.   **Assignment Pay Schedule**.

A.   **Assignment Skill/Pay Level and Rates**. Each inmate assignment shall be paid based upon a three (3) level system, unskilled to skilled according to the approved pay plan as follows:

1.   Assignments in Pay Level 1 shall normally involve routine, repetitive tasks with only minor variance in routine and involve skills, which are readily learned.
2.   Assignments in Pay Level 2 shall involve skills and abilities based upon training, experience and knowledge of established inmate assignments.
3.   Assignments in Pay Level 3 shall involve skills and abilities based upon training and experience usually derived from specialized and technical training, which would normally require certification or licensure, or for assignments normally reimbursed from outside sources.

B.   **Annual Pay Plan Budget Allotment and Rates**. The Unit Administrator shall compensate inmates, from the facility's approved Annual Pay Plan budget allotment, in accordance with the Inmate Pay Plan Matrix and the facility pay level and rates below:

| Directive Number 10.1 | Effective Date 6/30/2009 | Page 6 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

Pay Level 1      $ 0.75 per day
Pay Level 2      $ 1.25 per day
Pay Level 3      $ 1.75 per day

The projected yearly expenditures for inmate pay shall not exceed the facility's budget allotment. The Unit Administrator shall establish procedures to ensure compliance with the following standards:

1.  accurate recording of daily attendance and hours worked for each inmate;
2.  payment limited to actual time worked or attendance at an educational and/or program activity;
3.  a standard assignment shall normally be a full day;
4.  no double pay;
5.  no bonus pay, with the exception of a spill response stipend that shall only be available to inmates classified as blood spill cleaners;
6.  no participation, no pay in accordance with Section 5(F) of this Directive; and,
7.  no classification to inmate assignment, no pay.

C.  Commissary Pay Rates. Inmates assigned to the Commissary shall be paid in accordance with Attachment A, Inmate Pay Plan Matrix.

7.  Forms and Attachments. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for the intended function:

A.  CN 100101, Inmate Performance Evaluation Form; and,
B.  Attachment A, Inmate Pay Plan Matrix.

8.  Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.



# Inmate Performance Evaluation Form
## Connecticut Department of Correction

CN 100101
REV 6/30/09

| Inmate name: | | | | Inmate number: |
|---|---|---|---|---|

| Facility/Unit: | Date: |
|---|---|

| Assignment title: | Evaluation period: |
|---|---|

| Criteria | Poor | Fair | Good | Excellent |
|---|---|---|---|---|
| Attendance | ☐ | ☐ | ☐ | ☐ |
| Initiative | ☐ | ☐ | ☐ | ☐ |
| Productivity | ☐ | ☐ | ☐ | ☐ |
| Attitude | ☐ | ☐ | ☐ | ☐ |
| Overall | ☐ | ☐ | ☐ | ☐ |

Comments and recommendations:

| Inmate signature: | Date: |
|---|---|

| Supervisor name: | Title: |
|---|---|

| Supervisor signature: | Date: |
|---|---|

| Reviewer name: | Title: |
|---|---|

| Reviewer signature: | Date: |
|---|---|



# Inmate Pay Plan Matrix
## Connecticut Department of Correction

Attachment A
REV 6/30/09
AD 10.1

| ASSIGNMENT CATEGORY | PAY LEVEL 1 $0.75 per day | PAY LEVEL 2 $1.25 per day | PAY LEVEL 3 $1.75 per day |
|---|---|---|---|
| Barber | | | X |
| Blood Spill Cleaner (per spill) | | X | |
| Certified Job Classification | | | X |
| Clerk/Aides | | X | |
| Inmate Residential Program | X | | |
| Janitor | X | | |
| Kitchen 1 | X | | |
| Kitchen 2 | | X | |
| Kitchen 3 | | | X |
| Laundry | | X | |
| Maintenance 1 | X | | |
| Maintenance 2 | | X | |
| Maintenance 3 | | | X |
| Off Grounds | | | X |
| Outside Detail (facility property) | | X | |
| Painter | | X | |
| Specialty Job | | X | |
| Student | X | | |
| | | | |

| COMMISSARY PAY RATES | | | | | |
|---|---|---|---|---|---|
| Probationary Pay Rate | Pay Rate after 90 days | Pay raises beyond the initial .50 rate may be granted at the discretion of the supervising staff and when vacancies at those rates become available. | | | |
| .30 per hour | .50 per hour | .60 per hour | .70 per hour | .80 per hour | .90 per hour |



## Administrative Directives Revision Form
### Connecticut Department of Correction

CN 1305/1
REV 3/22/04

| Number: | 10.1 | Title: | Inmate Assignment and Pay Plan |
|---|---|---|---|

**Summary of Revisions:**

Section 1 Policy statement revised.

Section 2 (A) Added reference to Code of Federal Regulations, 29 CFR Part 1630, Americans with Disabilities Act of 1990. Re-designated subsequent subsections accordingly.

Section 2 (B) Added reference to Section 18-85a of the Connecticut General Statutes.

Section 2 (C) Transferred administrative directive reference from last subsection.

Section 2 (E and F) Updated ACA references.

Section 3 (B) Updated definition of "Inmate Assignment".

Section 3 (C) Added definition for "School Year".

Section 3 (D) Added definition for "Seven-Day Work Credit".

Section 4 (A) Expanded language regarding assignment requirements. Added reference to the Private Sector Prison Industry Enhancement Certification Program (PSPIEC). Replaced "programmatic, work or educational" with "inmate" as it applies to assignments. Several language and technical revisions made.

Section 4 (B) Replaced "Deputy Commissioner of Support Services" with "Deputy Commissioner of Administration". Designated Inmate Pay Plan Matrix as Attachment A. Added parts 1, 4 and 5. Expanded parts 2 and 9.

Section 4 (C) Numerous language additions and expansions. Deleted reference to Administrative Directive 10.19, Americans with Disabilities Act in the first paragraph.

Section 4 (C)(1) Added reference to Administrative Directive 10.19, Americans with Disabilities Act.

Section 4 (C)(2) Added age discrimination to list of reasons prohibited by law reading the selection of inmate participants. Technical revision.

Section 4 (C)(3) Language addition.

Section 4 (C)(4) New subsection. Added "safety and security concerns".

Section 4 (D) Added new subsection titled "Selection Priority". Re-designated subsequent subsections accordingly.

Section 4 (E) Language additions and expansions.

Section 5 (A) Added new subsection titled "Inmate Status as a Non-Employee". Re-designated subsequent subsections accordingly.

Section 5 (B) Added "inmate" to "assignment".

Section 5 (C) Added title to subsection "Inmate Use of Telephones". Technical revisions.

Section 5 (D) Added title to subsection "Inmate Use of Computers". Added reference to "industry" assignments. Technical revisions.

Section 5 (D)(1) Added reference to "industry computers".

Section 5 (D)(last paragraph) Limited inmate computer access to departmental assignments and duties.

Section 5 (E) Clarified language related to safety and health procedures.

Section 5 (F) Added "inmate" to "assignment". Deleted last line of subsection.

Section 5 (G) Clarified language in first sentence. Added language regarding the "No Participation, No Pay" standard.

| Revisions are: | ☒ Modification | ☐ Recision |
|---|---|---|

| Approved: | *Theresa C Lantz* | Date: 5.21.09 |
|---|---|---|



# Administrative Directives Revision Form
## Connecticut Department of Correction

CN 1305/2
REV 3/22/04

| **Number:** | 10.1 | **Title:** | Inmate Assignment and Pay Plan |

**Summary of Revisions:**

Section 5 (H) Expanded subsection to include five-day a week work assignments. Added reference to assignments that receive a pay per incident stipend. Added conditions on earning seven-day work credit.

Section 5 (I) Language addition.

Section 5 (J and K) Language revisions.

Section 6 (A) Added "inmate" to "assignment".

Section 6 (A)(2 and 3) Language revisions.

Section 6 (B)(second paragraph after pay levels) Language addition.

Section 6 (B)(1, 2, 6 and 7) Clarified language regarding inmate pay.

Section 6 (C) Added new subsection titled "Commissary Pay Rates".

Section 7 Added new section "Forms and Attachments". Added CN 100101, Inmate Performance Evaluation Form, and Attachment A, Inmate Pay Plan Matrix to directive. Re-designated subsequent sections accordingly.

Section 8 language addition.

**Forms and Attachments - Additions/Revisions/Deletions:**

Added reference to CN 100101, Inmate Performance Evaluation Form to Section 5(I).

Added references to Attachment A, Inmate Pay Plan Matrix to Sections 4(B), 4(B)(2) and 6(C).

# EXHIBIT B

| | State of Connecticut<br>Department of Correction | Directive Number<br>10.1 | Effective Date<br>10/22/15 | Page 1 of 6 |
| --- | --- | --- | --- | --- |
| | **ADMINISTRATIVE<br>DIRECTIVE** | Supersedes<br>Inmate Assignment and Pay Plan, dated 6/30/2009 | | |
| Approved By:<br><br>Commissioner Scott Semple | | Title<br><br>Inmate Assignment and Pay Plan | | |

1. <u>Policy</u>. The Department of Correction shall provide inmates with work, programmatic or educational opportunities.

2. <u>Authority and Reference</u>.

   A. Code of Federal Regulations, 29 CFR Part 1630, Americans with Disabilities Act of 1990.
   B. Connecticut General Statutes, Sections 10-17f, 10-69, 18-81, 18-85, 18-85a, 18-88 and 18-90a.
   C. Administrative Directives 4.2, Sentence Computation and Timekeeping; 4.6, Use of Computers and Related Technologies; 6.6, Reporting of Incidents; 9.2, Offender Classification; 9.5, Code of Penal Discipline; 9.8, Furloughs; 10.7, Inmate Communications; and 10.19, Americans with Disabilities Act.
   D. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standard 2-CO-5A-01.
   E. American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003, Standards 4-4182, 4-4212, 4-4215, 4-4337, 4-4448 through 4-4452 and 4-4461.
   F. American Correctional Association, Performance-Based Standards for Adult Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-2A-09, 4-ALDF-4B-03, 4-ALDF-5C-06 through 4-ALDF-5C-12.

3. <u>Definitions</u>. For the purposes stated herein, the following definitions apply:

   A. <u>Annual Pay Plan</u>. An annual operational plan for each non-industrial assignment.
   B. <u>Inmate Assignment</u>. A specific inmate work, programmatic or educational assignment.
   C. <u>School Year</u>. Each school year shall begin on July 1st and conclude on June 30th of the following year.
   D. <u>Seven-Day Work Credit</u>. A time credit of one (1) day for each seven consecutive days a sentenced inmate works at an assignment designated as a seven-day work assignment. Only inmates who were sentenced for an offense committed prior to October 1, 1994 are eligible for Seven-Day Work Credit.

4. <u>Organization and Development of all Inmate Work</u>.

   A. <u>Assignment Requirement</u>. No inmate shall have entitlement or a legitimate expectation to any work, programmatic or educational assignment or compensation therefor, except as provided for under federal and/or state law regarding: a) an inmate under the age of 21 who is in need of special education services according to the Individuals with Disabilities Education Act, b) any inmate under twenty one who has not earned a high school diploma or equivalent, and c) persons through the school year of their 21st birthday who are dominant in a foreign language.

| Directive Number 10.1 | Effective Date 10/22/15 | Page 2 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

With the exception of inmates assigned to the Private Sector Prison Industry Enhancement Certification Program (PSPIEC), which shall be voluntary, a sentenced inmate shall not be allowed to refuse or reject any inmate assignment. Such refusal may subject the inmate to disciplinary action as specified in Administrative Directive 9.5, Code of Penal Discipline. A sentenced inmate who is disciplined for refusing a programmatic, work or educational assignment may be:

1.  denied privileges in accordance with Administrative Directive 9.5, Code of Penal Discipline;
2.  precluded from a classification reduction; and,
3.  precluded from consideration for participation in a community release program in accordance with Administrative Directives 9.2, Offender Classification and 9.8, Furloughs.

No unsentenced inmate shall be required to take a work assignment except to perform housekeeping activities or as a disciplinary sanction in accordance with Administrative Directive 9.5, Code of Penal Discipline. An unsentenced inmate may elect to take a work assignment and in such cases shall be compensated in accordance with this Directive.

B.  Annual Pay Plan. Prior to June 1 annually, each Unit Administrator shall develop an Annual Pay Plan for all non-industries work, education and Tier IV program assignments within the facility. This plan shall be submitted to the Deputy Commissioner of Operations and Rehabilitative Services in consultation with the Deputy Commissioner of Administration for approval. Each pay plan shall conform to the skill/pay levels and rates established in Attachment A, Inmate Pay Plan Matrix and identify the projected assignments required by:

1.  assignment area;
2.  assignment description in accordance to Attachment A, Inmate Pay Plan Matrix;
3.  location;
4.  Syscon work code;
5.  Syscon work type;
6.  number of slots for each assignment;
7.  custody level for each slot within the assignment;
8.  pay level; and,
9.  designation as a five- or seven-day work assignment.

C.  Selection of Inmate Participants. Consistent with the approved Annual Pay Plan, a principal/educational administrator, supervisor or manager shall inform the appropriate facility classification staff of current or anticipated inmate assignment requirements and vacancies. Any inmate assignment shall require prior approval by the facility's classification committee. Inmates shall be required to submit a written request for a school or work assignment to the appropriate area as governed at each facility. Facility classification staff shall provide an opportunity for input from the principal/educational administrator, supervisor or manager accordingly, prior to assignment. An inmate may be required to complete a health screening before placement in an inmate assignment. Inmates who qualify may then be interviewed by the respective supervisor or manager. Once approved, the request shall be sent to the classification committee for assignment.

| Directive Number 10.1 | Effective Date 10/22/15 | Page 3 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

All assignments shall be made through the classification process. Selection shall take into account the following:

1. a provision for reasonable accommodations for assignment of handicapped inmates in accordance with Administrative Directive 10.19, Americans with Disabilities Act;
2. not discriminate against an inmate for reasons of age, race, religion, national origin, gender, or sexual orientation;
3. racial/ethnic diversity in the assignment of inmates to work/program assignments and pay; and,
4. safety and security concerns.

All inmate housing locations and classification assignments shall be logged on the RT-90U, Inmate Housing and Classification Assignment screen.

D. Selection Priority. The following inmates shall be given priority for facility or district inmate assignments:

1. inmates who possess a high school diploma or GED; or,
2. inmates who are on a waiting list for school.

Inmates may be exempt from the criteria listed above for significant reasons upon approval of the Unit Administrator or designee. Significant reasons shall include special education, age, sentence, medical/mental health, or other reasons as determined by the Unit Administrator or designee.

E. Training. Once hired/selected, an inmate may be required to complete a training program developed by the Unit Administrator or designee. Upon completion, the inmate shall sign to acknowledge receiving such training. The inmate shall continue to receive training as necessary once in the assignment and shall be supervised in a manner to promote successful performance.

5. General Assignment and Pay.

A. Inmate Status as a Non-Employee. Under no circumstances shall an inmate with an inmate assignment be considered an employee of the Department of Correction and/or the State of Connecticut.

B. Work Rules and Conditions. Each inmate shall report to the place of the inmate assignment at the required start time and shall not leave an inmate assignment without permission. Each inmate, regardless of inmate assignment, shall complete all assigned tasks diligently and conscientiously. Refusal to work, avoidance of assigned tasks, failure to complete assigned tasks or meet performance standards, or encouraging others to refuse to participate may result in a poor work evaluation, disciplinary action and/or dismissal from the inmate assignment. No inmate shall be assigned to any position which allows:

1. access to any institutional or personal data regarding staff;
2. access to data regarding inmate housing, assignment, schedules, time and/or attendance records, pay, evaluations, addresses, telephone numbers, property, financial resources, visitors, social security numbers or any other personal information regarding another inmate;

| Directive Number 10.1 | Effective Date 10/22/15 | Page 4 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

3.   access to sensitive facility management information; and,
4.   supervision, control or authority of any kind over another inmate.

C.   <u>Inmate Use of Telephones</u>. No inmate shall be allowed to use a telephone for personal or state use except as provided in Administrative Directive 10.7, Inmate Communications. Inmates shall not be left unsupervised in an area with an operable non-collect-call-only telephone. Any telephone in an area accessible to inmates shall be locked with a telephone lock or properly secured when staff are not present.

D.   <u>Inmate Use of Computers</u>. Inmate use of computers shall be in accordance with Administrative Directive 4.6, Use of Computers and Related Technologies. Inmates shall not be allowed to use a computer for any purpose except as specifically required by an educational, work or industries assignment. Inmates shall not use any computer that is connected to a network of any kind, with the exception of the following:

1.   education and industry computers that are linked by a closed network hub that shall not provide Internet access;
2.   programmatic computers that are linked to a network for use by inmates through the authorized facility job centers allowing access to the Department of Labor's website only; and,
3.   programmatic computers that are linked to a network for use by inmates on community supervision in order to perform programmatic functions.

Such permission shall be in writing and shall cite the limits of authorization as a condition of supervision.

All inmate access to computers shall be closely monitored and limited to departmental assignments and duties.

E.   <u>Safety and Health Procedures</u>. Each correctional employee and inmate shall observe all applicable federal and state safety and health regulations. The Unit Administrator shall ensure that appropriate safety and protective equipment is provided for each assignment and that each inmate is trained in the safe and proper use and operation of any equipment. This shall also apply to the use and handling of any tool, chemical, hazardous material, or waste related to the assignment.

Each inmate shall immediately report any injury to a supervisor. Medical attention shall be provided as necessary and shall be reported in accordance with Administrative Directive 6.6, Reporting of Incidents.

F.   <u>Assignment Day</u>. A standard assignment shall normally be a full day. The standard inmate assignment hours may be extended, without additional pay, by authorization of the Unit Administrator.

G.   <u>No Participation, No Pay</u>. An inmate shall only be paid a single day's pay for actual participation in an assignment to which he/she is classified, as indicated in Section 5(F) of this Directive, during a 24-hour period. The "No Participation, No Pay" standard shall normally apply to each inmate affected regardless of reason (e.g., facility lockdown, court appearance, off-ground trips, etc.).

| Directive Number 10.1 | Effective Date 10/22/15 | Page 5 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

H. **Five- and Seven-Day a Week Work Assignments**. Each inmate assignment shall be designated as a five- or seven-day a week work assignment in accordance with the Annual Pay Plan. This standard shall not apply to inmate assignments that receive pay per incident (e.g., blood spill cleaner, etc.).

For those inmates who are eligible for Seven-Day Work Credit, they must actually work seven consecutive days in order to obtain such credit in accordance with Section 3(D) of this Directive and Administrative Directive 4.2, Sentence Computation and Timekeeping.

I. **Inmate Performance Evaluation**. An inmate shall receive a written performance evaluation, utilizing CN 100101, Inmate Performance Evaluation Form after 30 days in a new or promotional assignment and at least semi-annually thereafter and at such other times as deemed appropriate. A copy of this evaluation shall be placed in the inmate's institutional file. An overall poor evaluation shall result in a counseling session with the inmate and may result in a referral to the classification committee for possible dismissal or reassignment. The inmate shall receive a copy of each written evaluation.

J. **Removal or Dismissal**. Dismissal for failure to perform, or for a chargeable infraction, may be accompanied by a disciplinary charge in accordance with Administrative Directive 9.5, Code of Penal Discipline. A finding of guilty shall not be required for removal or dismissal to occur. Removal for other purposes shall not require disciplinary action. A charge shall not be required when it is determined the inmate is incapable of performing to acceptable standards except that an inmate performance evaluation shall be completed and the inmate shall be considered for an alternate assignment.

K. **Pay Period**. Based on a facility's Annual Pay Plan an inmate shall be paid on a bi-weekly basis in accordance with Section 6 of this Directive.

6. **Assignment Pay Schedule**.

A. **Assignment Skill/Pay Level and Rates**. Each inmate assignment shall be paid based upon a three (3) level system, unskilled to skilled according to the approved pay plan as follows:

1. Assignments in Pay Level 1 shall normally involve routine, repetitive tasks with only minor variance in routine and involve skills, which are readily learned.
2. Assignments in Pay Level 2 shall involve skills and abilities based upon training, experience and knowledge of established inmate assignments.
3. Assignments in Pay Level 3 shall involve skills and abilities based upon training and experience usually derived from specialized and technical training, which would normally require certification or licensure, or for assignments normally reimbursed from outside sources.

B. **Annual Pay Plan Budget Allotment and Rates**. The Unit Administrator shall compensate inmates, from the facility's approved Annual Pay Plan budget allotment, in accordance with the Inmate Pay Plan Matrix and the facility pay level and rates below:

| Directive Number 10.1 | Effective Date 10/22/15 | Page 6 of 6 |
|---|---|---|
| Title | Inmate Assignment and Pay Plan | |

Pay Level 1     $ 0.75 per day
Pay Level 2     $ 1.25 per day
Pay Level 3     $ 1.75 per day

The projected yearly expenditures for inmate pay shall not exceed the facility's budget allotment. The Unit Administrator shall establish procedures to ensure compliance with the following standards:

1. accurate recording of daily attendance and hours worked for each inmate;
2. payment limited to actual time worked or attendance at an educational and/or program activity;
3. a standard assignment shall normally be a full day;
4. no double pay;
5. no bonus pay, with the exception of a spill response stipend that shall only be available to inmates classified as blood spill cleaners;
6. no participation, no pay in accordance with Section 5(F) of this Directive; and,
7. no classification to inmate assignment, no pay.

C. Commissary Pay Rates. Inmates assigned to the Commissary shall be paid in accordance with Attachment A, Inmate Pay Plan Matrix.

7. Forms and Attachments. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for the intended function:

A. CN 100101, Inmate Performance Evaluation Form; and,
B. Attachment A, Inmate Pay Plan Matrix.

8. Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.



# Inmate Pay Plan Matrix
## Connecticut Department of Correction

Attachment A
REV 10/22/15
AD 10.1

| ASSIGNMENT CATEGORY | PAY LEVEL 1 $0.75 per day | PAY LEVEL 2 $1.25 per day | PAY LEVEL 3 $1.75 per day |
|---|---|---|---|
| Barber | | | X |
| Blood Spill Cleaner (per spill) | | X | |
| Certified Job Classification | | | X |
| Clerk/Aides | | X | |
| Inmate Residential Program | X | | |
| Janitor | X | | |
| Kitchen 1 | X | | |
| Kitchen 2 | | X | |
| Kitchen 3 | | | X |
| Laundry | | X | |
| Maintenance 1 | X | | |
| Maintenance 2 | | X | |
| Maintenance 3 | | | X |
| Off Grounds | | | X |
| Outside Detail (facility property) | | X | |
| Painter | | X | |
| Specialty Job | | X | |
| Student | X | | |
| | | | |

| COMMISSARY PAY RATES | | | | | |
|---|---|---|---|---|---|
| Probationary Pay Rate | Pay Rate after 90 days | Pay raises beyond the initial .50 rate may be granted at the discretion of the supervising staff and when vacancies at those rates become available. | | | |
| .30 per hour | .50 per hour | .60 per hour | .70 per hour | .80 per hour | .90 per hour |

# EXHIBIT C

| State of Connecticut Department of Correction | Directive Number 9.4 | Effective Date 1/1/2010 | Page 1 of 17 |
|---|---|---|---|
| ADMINISTRATIVE DIRECTIVE | Supersedes Restrictive Status, dated 1/31/2009 | | |
| Approved By | Title Restrictive Status | | |

1. **Policy**. The Department of Correction shall provide restrictive conditions as required to preserve the order, safety and security of correctional facilities, and to manage inmate behavior.

2. **Authority and Reference**.

   A. Connecticut General Statutes, Section 18-81.

   B. Administrative Directives 4.1, Inmate Records; 6.1, Tours and Inspections; 6.2, Facility Post Orders and Logs; 6.6, Reporting of Incidents; 6.10, Inmate Property; 6.14, Security Risk Groups; 9.2, Offender Classification; 9.5, Code of Penal Discipline; 9.6, Inmate Administrative Remedies; and 10.3, Inmate Legal Assistance.

   C. American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003, Standards 4-4140, 4-4235, 4-4249 through 4273, and 4-4400.

   D. American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-2A-44, 4-ALDF-2A-46 through 4-ALDF-2A-66, and 4-ALDF-5C-04.

3. **Definitions and Acronyms**. For the purposes stated herein, the following definitions and acronyms apply:

   A. **Administrative Detention**. Placement of an inmate in a restrictive housing unit that results in segregation of the inmate:

      1. Pending the completion of a disciplinary hearing in accordance with Administrative Directive 9.5, Code of Penal Discipline when it is felt that failure to remove the inmate from population would present a danger to staff, the inmate or any other inmate, or cause an immediate threat of disruption to the facility;

      2. For investigation of an allegation or information involving the inmate in the commission of a crime, or of activities jeopardizing the security of the facility or the safety of staff or inmates that could result in placement on punitive or administrative segregation or transfer to high security; or,

      3. For temporary protection of an inmate pending a decision to place the inmate on Protective Custody status or an evaluation by health services staff.

   B. **Administrative Segregation**. Placement of an inmate on a restrictive housing status that results in segregation of the inmate whose behavior or management factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates and that the inmate can no longer be safely managed in general population.

   C. **Administrative Segregation Hearing Officer**. A supervisor appointed by the Director of Offender Classification and Population Management to conduct Administrative Segregation placement hearings.

   D. **Administrative Segregation Transition Phases**. Interim placement on a specialized restrictive housing status program while on

| Directive Number | Effective Date | Page 2 of 17 |
|---|---|---|
| 9.4 | 1/1/2010 | |
| Title | | |
| | Restrictive Status | |

Administrative Segregation to prepare an inmate for placement back to general population.

E..    CC. Correctional Center.

F.    Chronic Discipline. A restrictive housing status that results in segregation of an inmate whose behavior, while incarcerated, poses a threat to the security and orderly operation of the facility, or a risk to the safety of staff or other inmates due to repetitive disciplinary infractions.

G.    CI. Correctional Institution.

H.    DOC. Department of Correction.

I.    Facility Hearing Officer. A staff member appointed by the Unit Administrator to conduct hearings to consider classification assignments to Chronic Discipline.

J.    Facility Intelligence Coordinator. A staff member appointed by the Unit Administrator to assess all information in any given facility relating to Security Risk Group activity.

K.    High Security. A designation which provides for increased supervision of inmates who pose a threat to the safety and security of the facility, staff, inmates or the public.

L.    Monitored Movement. The following of an inmate's movement using:

     1.     Personal visual observation;

     2.     Visual observation with the aid of video equipment; and/or

     3.     Communication between staff initiated at the starting point of movement, along the inmate's route of travel and commencing at the authorized destination with the verification of the inmate's arrival.

M.    Punitive Segregation. Placement of an inmate on a restrictive housing status that is found guilty of violating the Code of Penal Discipline, as sanctioned in accordance with Administrative Directive 9.5, Code of Penal Discipline.

N.    Restraint Status I. The securing of an inmate with hand cuffs behind the back and leg irons while in Chronic Discipline.

O.    Restraint Status II. The securing of an inmate with hand cuffs in front while in Chronic Discipline.

P.    Restrictive Housing Status. A designation which provides for closely regulated management and separation of an inmate.

Q.    Restrictive Housing Unit (RHU). An inmate housing unit which is physically separated from other inmate housing where inmates on restrictive housing status, Administrative Detention, or Transfer Detention are placed.

R.    Restrictive Status. Restrictive status shall consist of the following categories: Administrative Detention, Punitive Segregation, Transfer Detention, Administrative Segregation, Special Needs Management, Chronic Discipline, High Security, Security Risk Group Affiliation (Close Monitoring), and Security Risk Group Safety Threat Member (Close Custody).

S.    Special Monitoring. A designation which provides for increased supervision and monitoring upon an inmate's completion of a special management program or for reasons of safety and security.

T.    Special Needs Management. A placement status for inmates who have demonstrated behavioral qualities either through the serious nature of their crime, behavior, or through reasonable belief that they pose a threat to the safety and security of staff, other inmates, themselves, or the public.

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 3 of 17 |
|---|---|---|
| Title | Restrictive Status | |

U.  **Special Needs Management Hearing Officer.** A supervisor appointed by the Director of Offender Classification and Population Management to conduct Special Needs Management placement hearings.

V.  **SRG.** Security Risk Group.

W.  **STARS.** Statistical Tracking Analysis Reporting System.

X.  **Station Log.** A hardbound book or automated chronological record of day-to-day events in a restrictive housing unit.

Y.  **Transfer Detention.** Placement of an inmate in a restrictive housing unit that results in segregation of the inmate who has been reclassified to a security level higher than the facility at which the inmate is housed and is awaiting transfer, or is awaiting transfer to another facility for the inmate's own protection or the protection of others.

Z.  **YI.** Youth Institution.

4.  **General Conditions for Restrictive Housing Status.** The basic level of conditions described in this section shall apply to an inmate on restrictive housing status. These conditions are for normal unit management. However, individual inmates may require additional restrictions for order and/or control based upon their past history or current behavior. Any such restrictions shall be noted in the housing station log and through the completion of an incident report in accordance with Administrative Directive 6.6, Reporting of Incidents. An inmate on restrictive housing status shall be limited to the specific provisions and standards outlined in Attachment A, Restrictive Housing Status – Provisions and Management Standards and Attachment C, Chronic Discipline Status – Provisions and Management Standards.

A.  **Housing Conditions.** Housing areas for inmates on restrictive housing status shall be well-ventilated, adequately lighted, appropriately heated and maintained in a sanitary condition at all times. Each cell shall normally be equipped with beds, which may be securely fastened to the wall or floor, and furnished in a manner consistent with cells in general population.

B.  **Clothing.** Each inmate shall be provided appropriate clothing in accordance with Administrative Directive 6.10, Inmate Property.

C.  **Hygiene.** Each inmate on restrictive housing status shall be provided opportunities for personal hygiene and hair care services.

D.  **Food.** An inmate on restrictive housing status shall be served the same quality and quantity of food as that available to inmates in general population.

E.  **Linen and Laundry.** An inmate on restrictive housing status shall normally be provided the same bedding items and laundry schedule as provided to inmates in general population.

5.  **Sentence Credits.** An inmate shall not earn or receive statutory good time, seven-day work credit, restoration of lost good time or outstanding meritorious performance awards while on Administrative Segregation, Close Custody, Chronic Discipline Status or Special Needs Management.

6.  **Access to Programs and Services.** An inmate on restrictive housing status shall not be entitled access to the same programs or privileges afforded an inmate in general population. An inmate on restrictive housing status shall be given access to available programs and services in accordance with Attachment A, Restrictive Housing Status – Provisions and Management Standards and Attachment C, Chronic Discipline Status – Provisions and Management Standards as follows:

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 4 of 17 |
|---|---|---|
| Title | Restrictive Status | |

A.  <u>Courts</u>. An inmate shall retain rights of access to the courts.
    Access shall include attorney/client visits and access to legal
    assistance in accordance with Administrative Directive 10.3, Inmate
    Legal Assistance.

B.  <u>Mail</u>. An inmate shall be provided the same opportunities for writing
    and receipt (not retention) of letters available to inmates in
    general population.

C.  <u>Counseling</u>. An inmate shall continue to receive the services of a
    counselor when on restrictive housing status.

D.  <u>Education</u>. An inmate in Administrative Segregation, Administrative
    Segregation Transition Phases, Special Needs Management or Chronic
    Discipline may have access to educational and library programs
    consistent with the security needs of the housing unit and/or
    facility. Individual education plans shall be maintained for those
    inmates under the age of 21 who are deemed appropriate by the
    Education Department. Such inmates shall, at a minimum, receive a
    comprehensive educational plan review to determine the scope of
    needed services. Recommendations from the Education Department shall
    be accommodated by the facility consistent with the security needs
    of the housing unit. The programs offered to inmates on
    Administrative Segregation, Administrative Segregation Transition
    Phases, Special Needs Management or Chronic Discipline shall be
    approved by the Director of Programs and Treatment (Division).

E.  <u>Health Services</u>. Each inmate shall have access to and be provided
    required medical, mental health and dental services.

F.  <u>Religion</u>. Facility chaplains shall schedule, at a minimum, weekly
    visits to inmates on restrictive housing status.

G.  <u>Recreation</u>. Recreation for an inmate on restrictive housing status
    shall be conducted outside the inmate's cell for a minimum of one
    (1) hour daily, five (5) days a week including holidays. A
    supervisor may deny recreation when releasing the inmate for
    recreation if the inmate presents a threat to the unit's safety and
    security. The reason for denial shall be noted in the station log
    and an incident report completed.

7.  <u>Designation of Restrictive Housing Units</u>. Where possible, and as
    appropriate, the Unit Administrator shall designate specific housing
    unit(s) that shall be used solely to house any inmate placed on
    restrictive housing status, Administrative Detention or Transfer
    Detention. Only staff or inmates with official business to conduct shall
    be allowed to enter the Restrictive Housing Unit.

8.  <u>Staffing</u>. Specifically screened staff shall be assigned to work a
    Restrictive Housing Unit in accordance with established facility
    guidelines. Some factors to be considered shall be: the nature of the
    inmates in the unit; the ability of the respective candidate to manage
    such inmates; and, the employee's performance record.

    A.  <u>Selection</u>. An employee assigned to work in a Restrictive Housing
        Unit as specified in Section 7 of this Directive, shall be a
        permanent status employee who has demonstrated maturity, good
        judgment and an ability to work in a difficult environment as
        reflected in acceptable performance rating in each job element of
        any service rating conducted during the previous 12 month period.

    B.  <u>Training and Supervision</u>. Special orientation for each employee
        shall be provided prior to placement on the unit to include:

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 5 of 17 |
|---|---|---|
| Title | Restrictive Status | |

1. the function of the unit;
2. the requirements of this Directive;
3. rules governing the unit's operation; and,
4. the needs and problems typical of inmates in the unit.

9. <u>Placement on Restrictive Housing Status</u>. The initial placement requirements for inmates placed on restrictive housing status, Administrative Detention or Transfer Detention shall be in accordance with Attachment B, Restrictive Housing Status Matrix.

    A. <u>Placement Order</u>. In order to protect the inmate or others, the Unit Administrator or designee may order an inmate's placement on restrictive housing status, Administrative Detention or Transfer Detention by completing CN 9401, Restrictive Housing Unit Status Order, stating the specific reasons for placement. Copies shall be distributed as designated on CN 9401, Restrictive Housing Unit Status Order. The Unit Administrator shall receive the original copy of the order within 24 hours or the following business day after placement. The Unit Administrator shall see that the required reviews are performed and documented on CN 9401, Restrictive Housing Unit Status Order.

    B. <u>Health Services Consultation</u>. Custody staff shall immediately notify facility health services staff when an inmate is identified for placement into a restrictive housing unit. In the event that any contraindications exist, custody staff shall be notified verbally and in writing utilizing CN 6602, Medical Incident Report. In addition, health services staff shall complete Attachment E, Health Evaluation for Restrictive Housing Unit (RHU) Placement (HR-006). This evaluation and notification shall be documented in the inmate's health record.

    C. <u>Status Removal</u>. When the inmate is removed from restrictive housing status, Administrative Detention or Transfer Detention the original order shall be placed in the inmate's master file and Section 4 of the order shall be completed.

    D. <u>Inmate Notification</u>. The inmate should normally receive a copy of CN 9401, Restrictive Housing Unit Status Order at the time of placement in the Restrictive Housing Unit, unless there is an emergency situation or major disturbance involving a substantial number of inmates. In such cases, the inmate shall receive a copy not later than 48 hours after placement on restrictive housing status.

10. <u>Placement on Chronic Discipline Status</u>. Chronic Discipline programs shall be established and maintained at designated facilities as authorized by the Deputy Commissioner of Operations. In addition, inmates on Chronic Discipline status who are attending court may be housed at Bridgeport CC, New Haven CC, Hartford CC, Corrigan-Radgowski CC and Garner CI with the authority of the Director of Offender Classification and Population Management.

Assignment to Chronic Discipline shall be dependent upon the seriousness and repetitiveness of disciplinary behavior. Other classification alternatives (e.g., risk level increases) shall be attempted where appropriate, prior to consideration for Chronic Discipline. Automatic consideration for Chronic Discipline shall occur under any of the following conditions:

| Directive Number<br>9.4 | Effective Date<br>1/1/2010 | Page 6 of 17 |
|---|---|---|
| Title | Restrictive Status | |

A.   two (2) or more incidental assaults of staff (as defined by form CN 6603, Report of Assault on Staff) within the past year of confinement;

B.   three (3) or more class A disciplinary offenses within 180 days; and,

C.   three (3) or more class A/B combination of disciplinary offenses within 120 days.

Automatic consideration does not imply an automatic classification increase to Chronic Discipline. If, in the professional judgment of the reviewer, an inmate may continue to benefit from sanctions imposed and inmate management techniques at a given facility, assignment to Chronic Discipline may not occur. Other inmates with a documented chronic history of disciplinary behavior and an inability to remain in level 4 confinement without disciplinary infractions may be considered for classification to Chronic Discipline.

11.   Chronic Discipline Review and Hearing. Each review and hearing for Chronic Discipline shall be in accordance with this section. An inmate shall not be placed in Chronic Discipline without a hearing.

A.   Hearing. The Unit Administrator shall designate a Facility Hearing Officer. The Facility Hearing Officer shall conduct a hearing to consider classification assignment to Chronic Discipline. The Facility Hearing Officer shall examine evidence to support the classification including the inmate's and/or any witness statements.

B.   Hearing Notice. A written notice of the hearing and the reasons for the hearing shall be given to the inmate a minimum of two (2) business days prior to the hearing utilizing CN 9402, Notification of Hearing. The notice shall state, as explicitly as possible, consistent with the protection of any informant, why such classification is being considered. The notice shall contain information that the inmate may be represented by an advocate and that the inmate may request witnesses. The inmate may waive the notice provision in writing by completing CN 9403, Waiver of 48-Hour Hearing Notice and/or Attendance; however, the Facility Hearing Officer may choose not to honor the waiver.

C.   Recommendation. The Facility Hearing Officer shall provide a written recommendation, to the Unit Administrator, utilizing CN 9404, Restrictive Status Report of Hearing for Placement or Removal form, including the information which was relied upon and the reasons for or against placement in Chronic Discipline. Any confidential information shall be maintained in a file which is not accessible to any inmate. The use of confidential information, along with any assessment of its reliability, shall be included with CN 9404, Restrictive Status Report of Hearing for Placement or Removal form, as a separate attachment.

D.   Decision. The Unit Administrator shall review any recommendation for assignment to Chronic Discipline. Any recommendation for assignment and placement, to include the completed CN 9404, Restrictive Status Report of Hearing for Placement or Removal form, and all supporting documentation, shall be forwarded to the Director of Offender Classification and Population Management within three (3) business days following the hearing. A decision shall be made by the Director of Offender Classification and Population Management, who shall complete and forward CN 9405, Notification of Decision to the Unit Administrator submitting the recommendation, the inmate, and the

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 7 of 17 |
|---|---|---|
| Title | Restrictive Status | |

Unit Administrator responsible for the respective Chronic Discipline Unit. Assignment to Chronic Discipline shall only be made by the Director of Offender Classification and Population Management.

E.    Placement. Once designated Chronic Discipline, the inmate shall be scheduled for transfer to a Chronic Discipline Unit. Normally, no inmate shall be transferred to a Chronic Discipline Unit (Interval I) prior to completion of any Punitive Segregation sanction. Transfer and approval for placement into Chronic Discipline shall be directed and approved by the Director of Offender Classification and Population Management.

F.    Classification. All classification and status change decisions within the unit, unless otherwise directed by the Administrative Directives, shall be made by the Unit Administrator or designee.

G.    Progression. Progression through Chronic Discipline intervals shall be contingent upon successful completion of specific program components in accordance with unit policies.

H.    Removal and Reclassification. Upon completion of the Chronic Discipline Unit Program, the Unit Administrator shall submit an Offender Classification Form in accordance with Administrative Directive 9.2, Offender Classification, to the Director of Offender Classification and Population Management with a recommendation for transfer. A classification reduction from Chronic Discipline shall only be made by the Director of Offender Classification and Population Management or higher authority. A written decision shall be made on the OCF and forwarded to the Unit Administrator and Director of Offender Classification and Population Management for transfer if appropriate.

12.    Placement on Administrative Segregation Status. Administrative Segregation shall be authorized at the Northern, Garner and MacDougall-Walker (Walker Building) Correctional Institutions for adult males, Manson Youth Institution for youth males, and York Correctional Institution for females. Other Administrative Segregation Transitional Phases shall be authorized at level 4 facilities designated by the Commissioner. Inmates on Administrative Segregation status who are attending court, may be housed at Bridgeport CC, New Haven CC, Hartford CC and Corrigan-Radgowski CC with the authority of the Director of Offender Classification and Population Management. Any facility not authorized to place inmates on Administrative Segregation shall place the inmate on Administrative Detention in accordance with this Directive and notify the Director of Offender Classification and Population Management to conduct a hearing. Placement of an inmate on Administrative Segregation shall be at the discretion of the Director of Offender Classification and Population Management in accordance with this Directive. An inmate shall not be placed in Administrative Segregation without notice and a hearing.

A.    Hearing. The Director of Offender Classification and Population Management shall designate an Administrative Segregation Hearing Officer. The Administrative Segregation Hearing Officer shall conduct a hearing to consider classification assignment to Administrative Segregation. The Administrative Segregation Hearing Officer shall examine evidence to support the classification including the inmate's and/or any witness statements. The Administrative Segregation Hearing shall be conducted not later than 30 days after the completion of Administrative Detention pending an investigation or after the completion of Punitive Segregation sanctions.

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 8 of 17 |
|---|---|---|
| Title | Restrictive Status | |

B. <u>Hearing Notice</u>. A written notice of the hearing and the reasons for the hearing shall be given to the inmate a minimum of two (2) business days prior to the hearing utilizing CN 9402, Notification of Hearing. The notice shall state as explicitly as possible, consistent with the protection of any informant, why Administrative Segregation is being considered. The notice shall contain information that the inmate may be represented by an advocate and that the inmate may request witnesses. The inmate may waive the notice provision in writing by completing CN 9403, Waiver of 48-Hour Hearing Notice and/or Attendance; however, the Administrative Segregation Hearing Officer may choose not to honor the waiver.

C. <u>Recommendation</u>. The Administrative Segregation Hearing Officer shall provide a written recommendation utilizing CN 9404, Restrictive Status Report of Hearing for Placement or Removal form, including the information which was relied upon and the reasons for or against placement in Administrative Segregation. Any confidential information shall be maintained in a file, which is not accessible to any inmate. The use of confidential information, along with any assessment of its reliability, shall be included with CN 9404, Restrictive Status Report of Hearing for Placement or Removal form, as a separate attachment.

D. <u>Decision</u>. The completed CN 9404, Restrictive Status Report of Hearing for Placement or Removal form, shall be forwarded to the Director of Offender Classification and Population Management within three (3) business days following the hearing. A decision shall be made by the Director of Offender Classification and Population Management, who shall complete and forward CN 9405, Notification of Decision to the appropriate District Administrator, Unit Administrator and the inmate within 15 days.

E. <u>Automatic Placement</u>. Automatic placement of an inmate on Administrative Segregation or Special Needs Management in accordance with Administrative Directive 9.2, Offender Classification shall require a hearing to be conducted in accordance with the provisions of this section.

F. <u>Progression</u>. Progression through the Administrative Segregation Transitional Phases shall be contingent upon successful completion of specific program components in accordance with unit policies.

G. <u>Release</u>. Release from Administrative Segregation/Special Needs Management shall be in accordance with Attachment B, Restrictive Housing Status Matrix by completing the appropriate section of CN 9404, Restrictive Housing Report of Hearing for Placement or Removal form.

13. <u>Placement on Special Needs Management Status</u>. Special Needs Management shall be authorized at the Northern, Garner and MacDougall-Walker (Walker Building) Correctional Institutions for adult males, Manson Youth Institution for youth males, and York Correctional Institution for females. Inmates on Special Needs Management status who are attending court, may be housed at Bridgeport CC, New Haven CC, Hartford CC and Corrigan-Radgowski CC with the authority of the Director of Offender Classification and Population Management. Any facility not authorized to place inmates on Special Needs Management shall place the inmate on Administrative Detention in accordance with this Directive and notify the Director of Offender Classification and Population Management to conduct a hearing. An inmate may be removed from any restrictive status category as defined in Section 3(R) of this Directive at any time for assignment to Special Needs Management (in cases when this occurs, the inmate shall only

| Directive Number<br>9.4 | Effective Date<br>1/1/2010 | Page 9 of 17 |
|---|---|---|
| Title | | |
| | Restrictive Status | |

be coded as Special Needs Management). An inmate shall not be placed in Special Needs Management without notice and a hearing. Request for placement hearing shall be made by the Unit Administrator in consultation with the DOC Director of Psychiatric Services.

A.  <u>Hearing</u>. The Special Needs Management Hearing Officer shall conduct a hearing to consider classification assignment to Special Needs Management. The Special Needs Management Hearing Officer shall examine evidence to support the classification including the inmate's and/or any witness statements as well as a recommendation from the DOC Director of Psychiatric Services and the Unit Administrator. The Special Needs Management Hearing shall be conducted:

1.  not later than 30 days after the completion of Administrative Detention pending an investigation;
2.  not later than 30 days from the date the Director of Offender Classification and Population Management approves the inmate's release from Administrative Segregation; or,
3.  after the completion of Punitive Segregation sanctions.

B.  <u>Hearing Notice</u>. A written notice of the hearing and the reasons for the hearing shall be given to the inmate a minimum of two (2) business days prior to the hearing utilizing CN 9402, Notification of Hearing. The notice shall state as explicitly as possible, consistent with the protection of any informant, why Special Needs Management is being considered. The notice shall contain information that the inmate may be represented by an advocate and that the inmate may request witnesses. The inmate may waive the notice provision in writing by completing CN 9403, Waiver of 48-Hour Hearing Notice and/or Attendance; however, the Special Needs Management Hearing Officer may choose not to honor the waiver.

C.  <u>Recommendation</u>. The Special Needs Management Hearing Officer shall provide a written recommendation utilizing CN 9404, Restrictive Status Report of Hearing for Placement or Removal form, including the information which was relied upon and the reasons for or against placement in Special Needs Management. Any confidential information shall be maintained in a file, which is not accessible to any inmate. The use of confidential information, along with any assessment of its reliability, shall be included with CN 9404, Restrictive Status Report of Hearing for Placement or Removal form, as a separate attachment.

D.  <u>Decision</u>. The completed CN 9404, Restrictive Status Report of Hearing for Placement or Removal form shall be forwarded to the Director of Offender Classification and Population Management for review and decision. Placement on Special Needs Management status or participation in the Special Needs Management Behavioral Treatment Program shall be determined by the Director of Offender Classification and Population Management in consultation with the Deputy Commissioner of Operations or designee as outlined in Attachment B, Restrictive Housing Status Matrix. Written notification of approval or denial for placement to Special Needs Management status shall be forwarded to the appropriate District and Unit Administrators, as well as to the inmate. If approved for Special Needs Management, the Director of Offender Classification and Population Management shall authorize the appropriate management subcode for the inmate.

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 10 of 17 |
|---|---|---|
| Title | Restrictive Status | |

E.  <u>Management</u>. Inmates placed on Special Needs Management status shall be managed in accordance with Attachment A, Restrictive Housing Status - Provisions and Management Standards. An individualized facility management plan for each inmate on Special Needs Management status shall be developed collaboratively by the facility custody and mental health staff, and reviewed and approved by the DOC Director of Psychiatric Services. The individualized facility management plan shall include recommendations to assist the inmate in achieving removal from Special Needs Management status.

F.  <u>Review</u>. A classification hearing for each inmate classified to Special Needs Management status shall be held at a minimum of every six (6) months. Each inmate classified to Special Needs Management status shall be reviewed by a mental health professional after 30 days of initial placement and every 90 days thereafter. All such reviews shall be documented in the inmate's health record.

G.  <u>Release</u>. The Unit Administrator in consultation with the DOC Director of Psychiatric Services shall review and make recommendations to the Director of Offender Classification and Population Management regarding an inmate's release from Special Needs Management status by completing the appropriate section of CN 9404, Restrictive Housing Report of Hearing for Placement or Removal form. Release from Special Needs Management status shall be determined by the Director of Offender Classification and Population Management in consultation with the Commissioner or designee as outlined in Attachment B, Restrictive Housing Status Matrix.

14.  <u>Placement on High Security Status</u>. An investigation shall be conducted by the Unit Administrator or designee to determine if an inmate may be considered for a High Security Monitoring Hearing, if such inmate meets one of the criteria listed in this section. The Unit Administrator, in consultation with the Director of Offender Classification and Population Management, may consider an inmate as a High Security Inmate if the inmate meets one or more of the criteria listed below. An inmate on High Security Monitoring shall be classified as an overall risk level 4 or above and shall be housed in a level 4 or 5 facility. Placement of an inmate on High Security Monitoring shall not preclude, and may be used in conjunction with, placement on any other restrictive status.

A.  <u>Review Procedures</u>. Each facility shall establish procedures to review each inmate, consistent with classification practices, to determine if an inmate shall be considered for a High Security Monitoring Hearing.

B.  <u>Criteria for Placement</u>. An inmate may be reviewed for classification as a high security inmate for any of the following reasons:

1.  Has a staff threat profile, including but not limited to, hostage taking, intentional/direct assault (as defined by form CN 6603, Report of Assault on Staff), and/or murder of a Department of Correction or other law enforcement staff member.

2.  Has a documented history of serious disruptive behavior including but not limited to, history of leading food strikes or work stoppages and/or associated with the design or construction of a correctional facility.

3.  Has a level 4 escape profile objective classification score.

4.  Has an instant serious escape, attempted serious escape, or a history of serious escape(s).

| Directive Number | Effective Date | Page 11 of 17 |
|---|---|---|
| 9.4 | 1/1/2010 | |
| Title | | |
| Restrictive Status | | |

5.   Any information that indicates inmate may attempt to escape, to include, but not limited to:

   a.   threats to escape;

   b.   information discovered on mail or phone review indicating plans for an escape;

   c.   possession of escape related contraband (tools, civilian clothing, maps, etc.);

   d.   cell damage that indicates an attempt or probable attempt to escape;

   e.   significant change in inmate's legal, institutional, or personal status; or,

   f.   additional detainers, denial of a release application, or new charges.

6.   Inmate's experience, special skills and/or knowledge which may present security or safety concerns.

7.   Other documented criteria to include confidential law enforcement intelligence information.

C.   Documentation. Information relating to Section 14(B) of this Directive, shall be documented on CN 9406, High Security Inmate Form. Copies of the completed form shall be forwarded to the Unit Administrator, Director of Offender Classification and Population Management Unit and the Director of Security.

D.   Notification. The Offender Classification and Population Management Unit shall be notified of any placement of an inmate on High Security Monitoring and shall make appropriate classification/profile changes. The Unit Administrator shall ensure that a green file flag card, designating the inmate as a 'High Security Inmate', is placed as the top page in Section 5 of the inmate's master file in accordance with Administrative Directive 4.1, Inmate Records.

E.   Housing. An inmate placed on High Security Monitoring shall be housed in a secured cell. The inmate shall be moved to a new cell at a minimum of every 90 days.

F.   Staff Awareness. Each unit that houses an inmate on High Security status shall maintain information related to the inmate's High Security status for unit staff review. An inmate who is on High Security status shall be issued a green inmate identification card.

G.   Management of High Security Inmates. A high security inmate shall be managed in accordance with general population standards with the following exceptions:

1.   escorted or monitored movement only;

2.   cell searches, at a minimum of two (2) times a week;

3.   in unit work assignments only;

4.   in unit or monitored programs;

5.   non-contact social visits only;

6.   mail retention, same as general population and automatic mail review; and,

7.   telephones, same as general population and automatic call review.

H.   Review. The status of each inmate placed on High Security Monitoring shall be reviewed, at a minimum, every six (6) months. The review shall be in conjunction with a classification review. Recommendation

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 12 of 17 |
|---|---|---|
| Title | Restrictive Status | |

for removal shall be made to the Unit Administrator who may endorse the recommendation and forward it to Director of Offender Classification and Population Management.

I.    Removal from High Security Monitoring. The Unit Administrator, in consultation with the Director of Security, shall forward recommendations for removal to the Director of Offender Classification and Population Management, who may consider removal of an inmate from High Security Monitoring, if one (1) or more of the following criteria becomes applicable:

1.    the inmate's physical condition changes enough to significantly reduce or no longer pose a threat of escape;

2.    relevant, valid and documented new information that exculpates the inmate or contradicts the initial information used for placement;

3.    the belief that an inmate may no longer presents a high-risk due to length of time served or changes in circumstances originally used to classify the inmate as a high security inmate; or,

4.    the passage of an extended period of exemplary institutional performance.

15.    Placement on Special Monitoring Status.

A.    Placement. Any inmate upon completion of a special management program (i.e., Administrative Segregation, Chronic Discipline or Special Needs Management) or who has been identified as a safety and security concern may be placed on Special Monitoring status as determined by the Unit Administrator. If approved for Special Monitoring status, the Unit Administrator shall authorize the appropriate management subcode for the inmate.

Any inmate who transfers from Northern CI shall be placed on Special Monitoring status prior to transfer. Any inmate who completes a special management program (i.e., Administrative Segregation, Chronic Discipline or Special Needs Management) at York CI or Manson YI shall be placed on Special Monitoring status upon completion of the program. All Special Monitoring designations shall be documented in Section 5 of the inmate's master file using CN 9202, Offender Classification History Form. The Unit Administrator shall ensure that a blue file flag card, designating the inmate as a 'Special Monitoring Inmate', is placed as the top page in Section 5 of the inmate's master file in accordance with Administrative Directive 4.1, Inmate Records.

Should an inmate be placed simultaneously on High Security status and Special Monitoring status, the High Security status shall take precedence (the inmate's RT-77 shall indicate the High Security). Should the inmate be removed from High Security status, the inmate's RT-77 shall reflect the status change from high security to special monitoring.

B.    Inmate Notification. The Counselor Supervisor of Classification, the Deputy Warden of Operations, the Unit Manager/Supervisor of the assigned unit (where applicable) and any other staff as determined by the Unit Administrator, shall conduct a meeting with the inmate within the first week of placement in order to notify the inmate of

| Directive Number<br>9.4 | Effective Date<br>1/1/2010 | Page 13 of 17 |
|---|---|---|
| Title | Restrictive Status | |

his/her placement on Special Monitoring status. The Counselor Supervisor of Classification shall review the inmate's history and reasons for placement on Special Monitoring status. The inmate shall be advised of the conditions related to Special Monitoring in accordance with CN 9407, Special Monitoring Status – Inmate Notification. The inmate shall sign and be given a copy of CN 9407, Special Monitoring Status – Inmate Notification. The signed CN 9407, Special Monitoring Status – Inmate Notification shall be placed in Section 5 of the inmate's master file.

C.    Management of Special Monitoring Inmates. An inmate on Special Monitoring status shall be managed in accordance with general population standards with the following exceptions:

1.    in unit work assignments only;
2.    random cell searches, at a minimum of once a week;
3.    mail and telephone calls shall be reviewed;
4.    inmate account activity shall be reviewed;
5.    unit staff shall monitor and report who the inmate interacts with during recreation, meal and tier activities;
6.    All disciplinary infractions shall be reported and reviewed; and,
7.    inmate's visits and visiting list shall be reviewed.

D.    Reporting. The requirements of Section 15(C) above shall be documented on CN 9408, Special Monitoring Review Form by the Unit Manager/Supervisor in conjunction with unit staff input. The completed form shall be forwarded to the Deputy Warden of Operations on a monthly basis. CN 9408, Special Monitoring Review Form shall be maintained while the inmate is on Special Monitoring status.

E.    Monthly Review. The Unit Manager/Supervisor shall meet with the inmate on a monthly basis to review the inmate's transition, activities and actions. The meeting shall be documented on CN 9408, Special Monitoring Review Form. The facility shall create and maintain a file for each inmate on Special Monitoring. All monthly reviews shall be placed in this file.

F.    Staff Awareness. Each unit that houses an inmate on Special Monitoring status shall maintain information related to the inmate's Special Monitoring status for unit staff review. An inmate who is on Special Monitoring status shall be issued a light blue inmate identification card.

G.    Transfers. Each inmate on Special Monitoring status who transfers from the designating facility shall be reviewed by the receiving facility in order to determine the continuation of Special Monitoring. If the receiving facility elects to continue the Special Monitoring status, a meeting shall be conducted as outlined in Section 15(B) of this Directive. If the receiving facility elects to discontinue the Special Monitoring status, the appropriate management subcode shall be removed by the receiving facility.

H.    Removal from Special Monitoring Status. After six (6) months, the Unit Manager/Supervisor may recommend the removal of the inmate from Special Monitoring status using CN 9408, Special Monitoring Review Form. All removals from Special Monitoring shall be documented in Section 5 of the inmate's master file using CN 9202, Offender Classification History Form.

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 14 of 17 |
|---|---|---|
| Title | Restrictive Status | |

16.  Restrictive Status Review.

   A.  Periodic Assessment. Each inmate on restrictive housing status shall
       be reviewed in accordance with Attachment B, Restrictive Housing
       Status Matrix.

   B.  Unit Administrator Inspection. An inspection of each Restrictive
       Housing Unit shall be conducted at least twice a week by the Unit
       Administrator in accordance with Administrative Directive 6.1, Tours
       and Inspections and recorded in the station log. At the Northern
       Correctional Institution, the Unit Administrator shall tour the
       facility once per week with the exception of Administrative
       Segregation Phase 1 and the Infirmary Unit, which shall be toured
       twice per week.

   C.  Staff Inspections. Each Restrictive Housing Unit shall be visited,
       at a minimum, by:

       1.  correctional staff at least every 15 minutes on an irregular
           schedule and on a more frequent basis for problematic inmates,
           with the exception of the Close Monitoring Unit at Northern
           CI, which shall be 30 minute tours;

       2.  a custody supervisor and/or Unit Manager each shift;

       3.  a member of the Health Services Unit at least once per shift.
           For facilities without a 24-hour Health Services Unit, tours
           shall be conducted when health services personnel are on duty;
           and,

       4.  a counselor at least daily and upon request.

       All visits shall be recorded in the station log in accordance with
       Administrative Directive 6.2, Facility Post Orders and Logs.
       Requests to see other staff shall be made in writing by the inmate.

   D.  Health Assessment. Each inmate shall be assessed by health services
       staff prior to placement in a Restrictive Housing Unit in order to
       determine housing suitability. Health services staff shall document
       the health assessment by completing CN 6602, Medical Incident
       Report. The original report shall be placed in the inmate's health
       record and a copy forwarded to the Shift Commander.

       Health services staff shall check inmates on Punitive Segregation,
       Administrative Detention and Transfer Detention status on a daily
       basis and shall check inmates on Administrative Segregation status
       three times a week.

       When an inmate remains on restrictive housing status beyond 30 days,
       a psychologist or psychiatrist shall conduct a personal interview
       with the inmate and document the inmate's mental status in the
       inmate's health record. If confinement continues for an extended
       period of time, the aforementioned psychological assessment shall be
       made every three (3) months or as clinically necessary. In the event
       that continued placement is contraindicated, health services staff
       shall promptly notify the Unit Administrator.

17.  Readmission. Upon readmission, all inmates who were previously on
     Administrative Segregation, Special Needs Management, Chronic Discipline,
     Security Risk Group Member or Security Risk Group Safety Threat Member
     status shall be placed on Administrative Detention status pending

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 15 of 17 |
|---|---|---|
| Title | Restrictive Status | |

placement to appropriate housing and managed in accordance with the
following procedures:

A.  Administrative Segregation Status. The Unit Administrator or
    designee shall review the inmate for continuation in Administrative
    Segregation status within 15 days of readmission and notify the
    Director of Offender Classification and Population Management of the
    inmate's readmission along with a recommendation for continuation or
    release from Administrative Segregation status in accordance with
    this Directive and the Classification Manual. The final disposition
    to continue/discontinue Administrative Segregation status shall be
    made by the Director of Offender Classification and Population
    Management. If it is determined to continue the inmate on
    Administrative Segregation status, the Administrative
    Segregation/Special Needs Management Hearing Officer shall conduct a
    hearing within 30 days from the date it is determined to return the
    inmate to Administrative Segregation status. The inmate shall be
    notified of the pending hearing by utilizing CN 9402, Notification
    of Hearing. If it is determined not to continue the inmate on
    Administrative Segregation status, a hearing shall not be required.
    At that time the Director of Offender Classification and Population
    Management shall sign the Release Section (page 2) of CN 9404,
    Restrictive Status Report of Hearing for Placement or Removal.

B.  Special Needs Management Status. The Unit Administrator or designee
    shall contact the Director of Offender Classification and Population
    Management, who shall consult with the DOC Director of Psychiatric
    Services and the Deputy Commissioner of Operations regarding the
    inmate's readmission in order to determine whether or not to return
    the inmate to Special Needs Management status in accordance with
    this Directive and the Classification Manual. If it is determined to
    continue the inmate on Special Needs Management status, the
    Administrative Segregation/Special Needs Management Hearing Officer
    shall conduct a hearing within 30 days from the date it is
    determined to return the inmate to Special Needs Management status.
    The inmate shall be notified of the pending hearing by utilizing CN
    9402, Notification of Hearing. If it is determined not to continue
    the inmate on Special Needs Management status, a hearing shall not
    be required. At that time the Director of Offender Classification
    and Population Management shall the sign the Release Section (page
    2) of CN 9404, Restrictive Status Report of Hearing for Placement or
    Removal.

C.  Chronic Discipline Status. The Unit Administrator or designee shall
    review the inmate for continuation on Chronic Discipline status,
    conducting a hearing in accordance with Section 11 of this Directive
    within 15 days of readmission. The Unit Administrator or designee
    shall notify the Director of Offender Classification and Population
    Management of the inmate's readmission along with a recommendation
    for continuation or release from Chronic Discipline status in
    accordance with this Directive and the Classification Manual. The
    final disposition to continue/discontinue Chronic Discipline status
    shall be made by the Director of Offender Classification and
    Population Management.

D.  Security Risk Group Member/Security Risk Group Safety Threat Member
    Status. The Unit Administrator or designee shall notify the Director
    of Security and the Director of Offender Classification and
    Population Management of any Security Risk Group Member or Security
    Risk Group Safety Threat Member's readmission by the next business

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 16 of 17 |
|---|---|---|
| Title | Restrictive Status | |

day. The inmate's status shall be reviewed by the Facility
Intelligence Coordinator/Unit Manager within 90 days of readmission.
Prior to meeting with the inmate, the Facility Intelligence
Coordinator/Unit Manager shall review the inmate's SRG file and
notify the inmate of the pending meeting regarding the inmate's SRG
status utilizing CN 61410, Security Risk Group/SRG Safety Threat
Member 90-Day Review Notification. The Facility Intelligence
Coordinator/Unit Manager shall meet with the inmate and advise the
inmate of the results of the review utilizing CN 61408, Security
Risk Group/SRG Safety Threat Member 90-Day Review. The original CN
61408, Security Risk Group/SRG Safety Threat Member 90-Day Review
shall be forwarded to the Director of Security or designee and a
completed copy of the form shall be forwarded to the inmate upon
completion of the review. A recommendation regarding the Security
Risk Group status for each readmitted inmate shall be made by the
Unit Administrator and reviewed by the Security Division. The final
disposition of continued Security Risk Group status shall be made by
the Director of Security.

18. Designation and Management of Security Risk Group/SRG Safety Threat
Members. Designation and management of Security Risk Group/SRG Safety
Threat Members shall be in accordance with Administrative Directive 6.14,
Security Risk Groups.

19. Extensions of Time. Notwithstanding the time frames established in this
Directive, the Unit Administrator and/or the Director of Offender
Classification and Population Management may extend such time frames for
good cause shown. Any such extensions of time shall be documented together
with the reasons for the extension on CN 9409, Notification of Extension
of Status. No inmate shall be confined on Administrative Detention status
for more than 30 days without notice as to the reasons for such placement
and an informal opportunity to be heard, either by a facility counselor,
or a designee of the Unit Administrator or Director of Classification and
Population Management. Any such informal notice and hearing shall be
documented on CN 9409, Notification of Extension of Status.

20. Appeal of a Special Management Decision. An inmate may file an appeal
regarding a special management (restrictive status) decision in accordance
with Administrative Directive 9.6, Inmate Administrative Remedies.

21. Restrictive Status Reporting. Each Unit Administrator shall include
restrictive status information in the monthly STARS report to the
appropriate District Administrator.

   A.  Restrictive Status Categories. For the purposes of this Directive,
       the following restrictive status categories shall be included in the
       monthly STARS report:

       1.  Administrative Detention;
       2.  Punitive Segregation;
       3.  Transfer Detention;
       4.  Administrative Segregation;
       5.  Chronic Discipline;
       6.  Close Custody (SRG Safety Threat Member); and,
       7.  Special Needs Management.

| Directive Number 9.4 | Effective Date 1/1/2010 | Page 17 of 17 |
|---|---|---|
| Title | Restrictive Status | |

B. <u>Reporting Requirements</u>. The report shall provide the following information for each category as required in accordance with Section 21(A) of this Directive:

    1.    Number of placements during the month;
    2.    Number of removals during the month; and,
    3.    Total number at the end of the month.

22. <u>Log Maintenance</u>. Staff assigned to a Restrictive Housing Unit shall maintain the permanent station log in accordance with Attachment D, Restrictive Housing Unit – Log Entries and Administrative Directive 6.2, Facility Post Orders and Logs.

23. <u>Forms and Attachments</u>. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for the intended function.

    A.    CN 9401, Restrictive Housing Unit Status Order;
    B.    CN 9402, Notification of Hearing;
    C.    CN 9403, Waiver of 48-Hour Hearing Notice and/or Attendance;
    D.    CN 9404, Restrictive Status Report of Hearing for Placement or Removal;
    E.    CN 9405, Notification of Decision;
    F.    CN 9406, High Security Information Report;
    G.    CN 9407, Special Monitoring Status – Inmate Notification;
    H.    CN 9408, Special Monitoring Review Form;
    I.    CN 9409, Notification of Extension of Status;
    J.    Attachment A, Restrictive Housing Status – Provisions and Management Standards;
    K.    Attachment B, Restrictive Housing Status Matrix;
    L.    Attachment C, Chronic Discipline Status – Provisions and Management Standards;
    M.    Attachment D, Restrictive Housing Unit – Log Entries; and,
    N.    Attachment E, Health Evaluation for Restrictive Housing Unit (RHU) Placement (HR-006).

24. <u>Exceptions</u>. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.



## Restrictive Housing Status - Provisions and Management Standards
### Connecticut Department of Correction

Attachment A/1
REV 1/1/10
AD 9.4

| Function | Punitive Segregation, Administrative Detention, or Transfer Detention | Administrative Segregation (Phase One) | Administrative Segregation Transition (Phase Two) | Administrative Segregation Transition (Phase Three) | Special Needs Management |
|---|---|---|---|---|---|
| Movement out of cell or out of secured area within housing unit (e.g., on tier or in day space) | Not more than two (2) inmates out of cell per tier or unit at one time. No restrictive status inmates shall be allowed out of their cells when general population inmates are in the unit. | Not more than six (6) inmates out of cell in the unit at one time. Each inmate, when out of the cell, shall be escorted, at a minimum, on a one (1) staff to one (1) inmate basis and handcuffed behind the back and in leg irons. Janitor shall be under direct supervision. | Not more than 16 inmates including janitors at one time. | Not more than 24 inmates and 2 workers at one time. | Not more than 24 inmates and 2 workers at one time. |
| Movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) | The placement of an inmate on out of cell restraint status shall be approved by the Unit Administrator or designee in accordance with AD 7.2, Armories. The Unit Administrator shall be notified within 24 hours of any inmate placed on out of cell restraint status. The type of restraint shall be approved by the Unit Administrator or designee in accordance with AD 7.2, Armories. The inmate on restraint status, prior to release from a cell, shall be handcuffed behind the back except when making telephone calls, at which time the inmate shall be handcuffed in the front before leaving the cell.

Each inmate, on out of cell restraint status, shall be escorted on a one (1) staff, one (1) inmate basis. Continued behavior problems shall result in review for Administrative Segregation placement or transfer to higher security. Where there are secured showers, an inmate on restraint status shall normally have handcuffs removed upon entering and reapplied before leaving the shower. Where there are no secure showers, each inmate on restraint status going to the shower shall be handcuffed in front prior to leaving the cell and remain handcuffed while showering. A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such. | Except for any assigned janitors, inmates shall, prior to release from a cell, at a minimum be handcuffed behind the back and in leg irons except when making phone calls at which time the inmate shall be handcuffed in front before leaving the cell. Handcuffs may be removed when the inmate is in a secure shower or secure individual recreation area. A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such. | For the first 30 days, inmates shall, prior to release from a cell, be handcuffed in front. After 30 days restraints not authorized unless for movement outside the unit or while waiting placement back into Administrative Segregation (Phase 1) or Punitive Segregation at which point the standards set forth under Administrative Segregation (Phase 1) shall apply. A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such. | Restraints not authorized unless for movement outside the unit or while waiting placement back into Administrative Segregation (Phase 1) or Punitive Segregation at which point the standards set forth under Administrative Segregation (Phase 1) shall apply. | The placement of an inmate on out of cell restraint status shall be approved by the Unit Administrator or designee in accordance with AD 7.2, Armories. The Unit Administrator shall be notified within 24 hours of any inmate placed on out of cell restraint status. The type of restraint shall be approved by the Unit Administrator or designee in accordance with AD 7.2, Armories. |



# Restrictive Housing Status - Provisions and Management Standards
## Connecticut Department of Correction

Attachment A/2
REV 1/1/10
AD 9.4

| Function | Punitive Segregation, Administrative Detention, or Transfer Detention | Administrative Segregation (Phase One) | Administrative Segregation Transition (Phase Two) | Administrative Segregation Transition (Phase Three) | Special Needs Management |
|---|---|---|---|---|---|
| Movement out of Unit other than to adjacent Recreation Area | If not on restraint status, a minimum of one (1) officer per inmate as escort. When outside the unit each inmate shall be handcuffed behind the back and escorted by a minimum of one (1) officer per inmate. An inmate shall, at a minimum, be frisk searched upon leaving and returning to the unit. | When outside of unit each inmate, at a minimum, shall be handcuffed behind the back and escorted by a minimum of one (1) officer per inmate. An inmate shall, at a minimum, be frisk searched upon leaving and returning to the unit. | Inmates shall be escorted, at a minimum, by one (1) staff member for every three (3) inmates. The inmate shall be handcuffed in the front. At a minimum the inmate shall be frisked searched upon leaving and returning to the unit. | Inmates, at a minimum, shall be escorted and supervised by one (1) staff member for every eight (8) inmates. No restraints. | Inmates, at a minimum, shall be escorted and supervised by one (1) staff member for every eight (8) inmates. Restraint status shall be determined by the inmate's mental health treatment plan and appropriate custody protocols (as needed). |
| In Cell Observation | Direct observation by a correctional officer, not less frequently than every 15 minutes. Living, breathing flesh shall be observed. | Direct observation by a correctional officer, not less frequently than every 15 minutes. Living, breathing flesh shall be observed. | Direct observation by a correctional officer, not less frequently than every 15 minutes. Living, breathing flesh shall be observed. | Direct observation by a correctional officer, not less frequently than every 15 minutes. Living, breathing flesh shall be observed. | Direct observation by a correctional officer, not less frequently than every 15 minutes. Living, breathing flesh shall be observed. |
| In Cell Restraint Status | The placement of an inmate on in-cell restraint status shall be approved by the Shift Commander or Unit Manager. Any time an inmate is placed on in-cell restraint status an Incident Report shall be submitted in accordance with AD 6.6, Reporting of Incidents. The Unit Administrator shall be notified within one (1) hour of any inmate placed on in cell restraint status. The type of restraint shall be approved by the Shift Commander or designee in accordance with AD 7.2, Armories. An inmate placed on in-cell restraint status shall be reviewed every 24 hours by the Unit Administrator. An inmate retained on in-cell restraint status beyond 72 hours shall be reviewed by the Unit Administrator. The facility Shift Commander or Unit Manager shall observe each inmate on in-cell restraint status at a minimum of once per shift. A health services staff member shall observe each inmate on in-cell restraint status no less frequently than twice during a 24-hour period. | The placement of an inmate on in-cell restraint status shall be approved by the Shift Commander or Unit Manager. Any time an inmate is placed on in-cell restraint status an Incident Report shall be submitted in accordance with AD 6.6, Reporting of Incidents. The Unit Administrator shall be notified within one (1) hour of any inmate placed on in cell restraint status. The type of restraint shall be approved by the Shift Commander or designee in accordance with AD 7.2, Armories. An inmate placed on in-cell restraint status shall be reviewed every 24 hours by the Unit Administrator. An inmate retained on in-cell restraint status beyond 72 hours shall be reviewed by the Unit Administrator. The facility Shift Commander or Unit Manager shall observe each inmate on in-cell restraint status at a minimum of once per shift. A health services staff member shall observe each inmate on in-cell restraint status no less frequently than twice during a 24-hour period. | The placement of an inmate on in-cell restraint status shall be approved by the Shift Commander or Unit Manager. Any time an inmate is placed on in-cell restraint status an Incident Report shall be submitted in accordance with AD 6.6, Reporting of Incidents. The Unit Administrator shall be notified within one (1) hour of any inmate placed on in cell restraint status. The type of restraint shall be approved by the Shift Commander or designee in accordance with AD 7.2, Armories. An inmate placed on in-cell restraint status shall be reviewed every 24 hours by the Unit Administrator. An inmate retained on in cell restraint status beyond 72 hours shall be reviewed by the Unit Administrator. The facility Shift Commander or Unit Manager shall observe each inmate on in-cell restraint status at a minimum of once per shift. A health services staff member shall observe each inmate on in-cell restraint status no less frequently than twice during a 24-hour period. | The placement of an inmate on in-cell restraint status shall be approved by the Shift Commander or Unit Manager. Any time an inmate is placed on in-cell restraint status an Incident Report shall be submitted in accordance with AD 6.6, Reporting of Incidents. The Unit Administrator shall be notified within one (1) hour of any inmate placed on in cell restraint status. The type of restraint shall be approved by the Shift Commander or designee in accordance with AD 7.2, Armories. An inmate placed on in-cell restraint status shall be reviewed every 24 hours by the Unit Administrator. An inmate retained on in cell restraint status beyond 72 hours shall be reviewed by the Unit Administrator. The facility Shift Commander or Unit Manager shall observe each inmate on in-cell restraint status at a minimum of once per shift. A health services staff member shall observe each inmate on in-cell restraint status no less frequently than twice during a 24-hour period. | The placement of an inmate on in-cell restraint status shall be approved by the Shift Commander or Unit Manager. Any time an inmate is placed on in-cell restraint status an Incident Report shall be submitted in accordance with AD 6.6, Reporting of Incidents. The Unit Administrator shall be notified within one (1) hour of any inmate placed on in cell restraint status. The type of restraint shall be approved by the Shift Commander or designee in accordance with AD 7.2, Armories. An inmate placed on in-cell restraint status shall be reviewed every 24 hours by the Unit Administrator. An inmate retained on in cell restraint status beyond 72 hours shall be reviewed by the Unit Administrator. The facility Shift Commander or Unit Manager shall observe each inmate on in-cell restraint status at a minimum of once per shift. A health services staff member shall observe each inmate on in-cell restraint status no less frequently than twice during a 24-hour period. |



# Restrictive Housing Status - Provisions and Management Standards
## Connecticut Department of Correction

Attachment A/3
REV 1/1/10
AD 9.4

| Function | Punitive Segregation, Administrative Detention, or Transfer Detention | Administrative Segregation (Phase One) | Administrative Segregation Transition (Phase Two) | Administrative Segregation Transition (Phase Three) | Special Needs Management |
|---|---|---|---|---|---|
| In Cell Restraint Status (Continued) | A health services professional shall make a mental health assessment within 24 hours of an inmate's placement on in-cell restraints. An inmate's placement on in-cell restraint status shall be directly observed by a correctional officer not less frequently than every 15 minutes. In such cases the standards set forth in AD 6.5, Use of Force shall be followed. | A health services professional shall make a mental health assessment within 24 hours of an inmate's placement on in-cell restraints. An inmate placed on in-cell restraint status shall be directly observed by a correctional officer not less frequently than every 15 minutes. In such cases the standards set forth in AD 6.5, Use of Force shall be followed. | A health services professional shall make a mental health assessment within 24 hours of an inmate's placement on in-cell restraints. An inmate placed on in-cell restraint status shall be directly observed by a correctional officer not less frequently than every 15 minutes. In such cases the standards set forth in AD 6.5, Use of Force shall be followed. | A health services professional shall make a mental health assessment within 24 hours of an inmate's placement on in-cell restraints. An inmate placed on in-cell restraint status shall be directly observed by a correctional officer not less frequently than every 15 minutes. In such cases the standards set forth in AD 6.5, Use of Force shall be followed. | A health services professional shall make a mental health assessment within 24 hours of an inmate's placement on in-cell restraints. An inmate placed on in-cell restraint status shall be directly observed by a correctional officer not less frequently than every 15 minutes. In such cases the standards set forth in AD 6.5, Use of Force shall be followed. |
| Cell Searches | Random, but not less frequently than three (3) times every seven (7) days or when warranted. | Random, but not less frequently than three (3) times every seven (7) days or when warranted. | Not less frequently than twice every seven (7) days. | Not less frequently than once every even (7) days. | Not less frequently than once every even (7) days. |
| Security Checks | Daily on first and second shift. | Daily on first and second shift. | Daily on first and second shift. | Daily on first and second shift. | Daily on first and second shift. |
| Showers | Minimum of three (3) times per week with a 15-minute out of cell limit. | Minimum of three (3) times per week with a 15-minute out of cell limit. | Minimum of three (3) times per week with a 15-minute out of cell limit. | Minimum of three (3) times per week with a 15-minute out of cell limit. | Daily or as otherwise directed by the inmate's mental health treatment plan. |
| Work Assignments | Limited to cleaning and food service in Housing Unit. No seven (7) day jobs. | None | Limited to Unit. No seven (7) day jobs. | As determined by the Unit Administrator. | As determined by the Unit Administrator. |
| Food Service | Regular meal inside cell. | Regular meal inside cell. | Regular meal inside cell. | Regular meal outside of cell but in housing unit. | Regular meal inside cell or as otherwise directed by the inmate's mental health treatment plan. |
| Recreation | One (1) hour per day, five (5) days a week in a controlled area, including holidays. An inmate on restraint status shall not receive recreation with an inmate not on restraint status. | One (1) hour per day, five (5) days a week in a controlled area. Restraints (handcuffs) required unless in a secure individual recreation area. An inmate on restraint status shall not receive recreation with an inmate not on restraint status. | A minimum of one (1) hour per day, five (5) days a week. Restraints for the first 30 days, handcuffed in the front, thereafter, no restraints. | A minimum of one (1) hour per day, five (5) days a week. No restraints. | A minimum of two (2) hours per day or as otherwise directed by the inmate's mental health treatment plan. Restraint determination shall be in accordance with the inmate's mental health treatment plan. |
| Programs | None. Counseling, Chaplaincy and Health Services staff shall tour unit at a minimum of once every seven (7) days. | All program opportunities shall be provided or arranged for in cell. Religious and Counseling programs shall be available on a limited basis. | Program opportunities shall be provided out of cell after the first 30 days in restraints, separate from general population in a secured area. All programs shall be approved by the Director of Programs and Treatment. | Program opportunities shall be provided out of cell separate from general population in a secured area. All programs shall be approved by the Director of Programs and Treatment. | Programming in accordance with individualized facility management plan. |



# Restrictive Housing Status - Provisions and Management Standards
## Connecticut Department of Correction

Attachment A/4
REV 1/1/10
AD 9.4

| Function | Punitive Segregation, Administrative Detention, or Transfer Detention | Administrative Segregation (Phase One) | Administrative Segregation Transition (Phase Two) | Administrative Segregation Transition (Phase Three) | Special Needs Management |
|---|---|---|---|---|---|
| Education | At a minimum, individual education plans shall be maintained for those inmates under the age of 21 who are deemed appropriate by the Education Department. Recommendations from the Education Department shall be accommodated consistent with the security needs of the housing unit. | At a minimum, individual education plans shall be maintained for those inmates under the age of 21 who are deemed appropriate by the Education Department. Recommendations from the Education Department shall be accommodated consistent with the security needs of the housing unit. | At a minimum, individual education plans shall be maintained for those inmates under the age of 21 who are deemed appropriate by the Education Department. Recommendations from the Education Department shall be accommodated consistent with the security needs of the housing unit. | At a minimum, individual education plans shall be maintained for those inmates under the age of 21 who are deemed appropriate by the Education Department. Recommendations from the Education Department shall be accommodated consistent with the security needs of the housing unit. | At a minimum, individual education plans shall be maintained for those inmates under the age of 21 who are deemed appropriate by the Education Department. Recommendations from the Education Department shall be accommodated consistent with the security needs of the housing unit. |
| Inmate Property | See AD 6.10, Inmate Property | See AD 6.10, Inmate Property | See AD 6.10, Inmate Property | See AD 6.10, Inmate Property | See AD 6.10, Inmate Property or as otherwise directed by the inmate's mental health treatment plan. |
| Visits | Visits generally shall not be allowed. Non-contact visits at Level 4 facilities and above. Legal visits as needed and approved by the Unit Administrator or designee. | An inmate shall be allowed one (1) 30-minute non-contact visit per week, only with immediate family. No extended family visits. Legal visits as needed and approved by Unit Administrator or designee. | An inmate shall be allowed only two (2) 30-minute non-contact visits per week, only with immediate family. No extended family visits. Legal visits as needed and approved by Unit Administrator or designee. | An inmate shall be allowed a minimum of three (3) 30-minute visits per week. No extended family visits. Legal visits as needed and approved by the Unit Administrator or designee. | An inmate shall be allowed a minimum of three (3) one hour visits per week. No extended family visits. Legal visits as needed and approved by the Unit Administrator or designee or as otherwise directed by the inmate's mental health treatment plan. |
| Mail Retention | May send and receive mail same as general population but may retain only five (5) letters in cell. | May send and receive mail same as general population but may retain only five (5) letters in cell. | In accordance with storage requirements in AD 6.10, Inmate Property. | In accordance with storage requirements in AD 6.10, Inmate Property. | In accordance with storage requirements in AD 6.10, Inmate Property or as otherwise directed by the inmate's mental health treatment plan. |
| Reading Materials | Limited to two (2) books or periodicals at a time. Legal materials shall be provided upon request as required to address a court issue that cannot wait until release from restrictive status. | Shall not exceed the four (4) cubic feet of total allowable property in the cell in accordance with AD 6.10, Inmate Property. Amount may be restricted by the Unit Administrator. | In accordance with storage requirement in AD 6.10, Inmate Property. | In accordance with storage requirement in AD 6.10, Inmate Property. | In accordance with storage requirement in AD 6.10, Inmate Property or as otherwise directed by the inmate's mental health treatment plan. |
| Telephone Usage | Not allowed unless approved by the Unit Administrator on a case-by-case basis. | One (1) 15-minute call per week, except legal telephone calls as approved by a supervisor/counselor. | Two (2) 15-minute calls per week, except legal telephone calls as approved by a supervisor/counselor. | A minimum of three (3) 15-minute calls per week, except legal telephone calls as approved by a supervisor/counselor. | A minimum of three (3) 15-minute calls per week, except legal telephone calls as approved by a supervisor/counselor or as otherwise directed by the inmate's mental health treatment plan. |
| Television | None | None | None | None | Allowed, in accordance with AD 6.10, Inmate Property or as otherwise directed by the inmate's mental health treatment plan. |



# Restrictive Housing Status - Provisions and Management Standards
## Connecticut Department of Correction

Attachment A/5
REV 1/1/10
AD 9.4

| Function | Punitive Segregation, Administrative Detention, or Transfer Detention | Administrative Segregation (Phase One) | Administrative Segregation Transition (Phase Two) | Administrative Segregation Transition (Phase Three) | Special Needs Management |
|---|---|---|---|---|---|
| Radio In Cell | None | Allowed, in accordance with AD 6.10, Inmate Property. | Allowed, in accordance with AD 6.10, Inmate Property. | Allowed, in accordance with AD 6.10, Inmate Property. | Allowed, in accordance with AD 6.10, Inmate Property or as otherwise directed by the inmate's mental health treatment plan. |
| Commissary | As determined by the Unit Administrator | Weekly Spending Limit = $25 | Weekly Spending Limit = $30 | Weekly Spending Limit = $35 | Weekly Spending Limit = $50 |



# Restrictive Housing Status Matrix
## Connecticut Department of Correction

Attachment B
REV 1/1/10
AD 9.4

| Type of Restrictive Status | Purpose(s) | Approval Authority for Placement | Approval Authority for Release | Authorized Length of Confinement | Review Requirements |
|---|---|---|---|---|---|
| Administrative Segregation Transition Phases *Northern and York only* | To prepare inmate for return to general population | Unit Administrator or higher authority | Commissioner or designee | Indefinite | Classification staff every seven (7) days for first two (2) months and every 30 days thereafter and by a mental health professional after 30 days and every three (3) months following. |
| Administrative Segregation *Northern and York only* | Classified as a threat to staff, other inmates or facility security. (Requires a hearing prior to placement) | Director of Offender Classification and Population Management or higher authority | Commissioner or designee | Indefinite | Classification staff every seven (7) days for first two (2) months and every 30 days thereafter and by a mental health professional after 30 days and every three (3) months following. |
| Punitive Segregation | Discipline (Requires a hearing prior to placement) | Disciplinary Hearing Officer | Unit Administrator or higher authority or inmate serves time | In accordance with A.D. 9.5, Code of Penal Discipline | Local as appropriate |
| Administrative Detention | During an investigation or pending a hearing if an inmate may need protection or poses a threat to facility security and safety. | Shift Commander, higher authority or Director of Offender Classification and Population Management | Unit Administrator, higher authority or Director of Offender Classification and Population Management | Up to 14 calendar days. When an Administrative Segregation hearing is pending, up to 30 calendar days. | Every 72 hours by the Unit Administrator or designee and recorded on Restrictive Housing Order. |
| Transfer Detention | Pending transfer as appropriate | Shift Commander, higher authority or Director of Offender Classification and Population Management | Shift Commander, higher authority or Director of Offender Classification and Population Management | Up to 72 hours excluding weekends and holidays | Local as appropriate |
| Chronic Discipline Interval I | Adjustment of problematic inmate behavior due to multiple disciplinary reports | Director of Offender Classification and Population Management | Approval for release to Interval II shall be by the Unit Administrator | Minimum of 30 days | Classification staff every seven (7) days for one (1) month and every 30 days thereafter. |
| Chronic Discipline Interval II | To prepare inmate for return to general population | Unit Administrator | Director of Offender Classification and Population Management | Minimum of 60 days | Classification staff every 30 days. By a mental health professional every 90 days. Inmates remaining in the Close Custody for Chronic Discipline Unit for more than six (6) months shall be reviewed for Administrative Segregation. |
| Special Needs Management | For inmates who have demonstrated behavioral qualities either through the serious nature of their crime, behavior or reasonable belief that they continue to pose a threat to the safety and security of staff, other inmates, themselves, or the public. | Director of Offender Classification and Population Management in consultation with the Deputy Commissioner of Operations or designee and the DOC Director of Psychiatric Services. | Director of Offender Classification and Population Management in consultation with the Deputy Commissioner of Operations or designee and the DOC Director of Psychiatric Services. | Indefinite | A classification hearing shall be held at a minimum of every six (6) months. By a mental health professional after 30 days of initial placement and every 90 days thereafter. |



# Chronic Discipline Status - Provisions and Management Standards
## Connecticut Department of Correction

Attachment C/1
REV 1/1/10
AD 9.4

| Function | Chronic Discipline - Interval I | Chronic Discipline - Interval II |
|---|---|---|
| Out of Cell Restraints | For the first week all inmates, whenever outside of their cell, shall be in Restraint Status I.<br><br>After one (1) week in Restraint Status I, the Chronic Disciplinary Unit Classification Committee will review the inmate's behavior and if appropriate recommend that the inmate be placed in Restraint Status II.<br><br>After one (1) week in Restraint Status II, the Chronic Disciplinary Unit Classification Committee will review the inmate's behavior and if appropriate recommend that all restraints be removed.<br><br>The Deputy Warden of Operations shall be the appropriate authority for this change in restraint status. | No restraints allowed unless being moved back to Interval I. |
| Movement Within the Unit | Each inmate on Restraint Status I shall be escorted on a minimum of one (1) staff to two (2) inmate basis unless at recreation.<br><br>Each inmate on Restraint Status II shall be escorted on a minimum of one (1) staff to four (4) inmate basis. | Not to exceed 24 inmates and two (2) inmate workers in any secured area at one time. |
| Movement out of the Unit Within the Facility | Restraint Status and Escort Status will remain the same as for movement within the Unit. | Four (4) inmates escorted by a minimum of One (1) staff member. |
| In Cell Observation | 15-minute checks to be conducted by assigned staff. | 15-minute checks to be conducted by assigned staff. |
| In Cell Restraint Status | Any inmate who requires in cell restraint status shall be automatically reviewed for placement into Administrative Segregation. Their status will be managed by AD 6.5, Use of Force and AD 9.4, Restrictive Status. | Any inmate who requires in cell restraint status shall be automatically reviewed for placement into Administrative Segregation. Their status will be managed by AD 6.5, Use of Force and AD 9.4, Restrictive Status. |
| Cell Searches | Not less frequently than once every seven (7) days. | Not less frequently than once every seven (7) days. |
| Security Checks | Daily on first and second shift. | Daily on first and second shift. |
| Showers | Three (3) showers per week. 15-minute out of cell limit in a secured shower. | Minimum of three (3) showers per week. 15-minute out of cell limit. |
| Food Service | Regular meals inside of cell. | One meal per day on tier. |
| Work Assignments | 1. Barber position in Interval I<br>2. Any formal or informal disciplinary sanction will result in loss of the job.<br><br>Inmates will be paid institutional wages in accordance with AD 10.1, Inmate Assignment and Pay Plan.<br><br>All work assignments will be assigned by the Chronic Disciplinary Classification Committee | 1. Barber position in Interval II<br>2. Any formal or informal disciplinary sanction will result in loss of the job.<br><br>Inmates will be paid institutional wages in accordance with AD 10.1, Inmate Assignment and Pay Plan.<br><br>All work assignments will be assigned by the Chronic Disciplinary Classification Committee. |



# Chronic Discipline Status - Provisions and Management Standards
## Connecticut Department of Correction

Attachment C/2
REV 1/1/10
AD 9.4

| Function | Chronic Discipline - Interval I | Chronic Discipline - Interval II |
|---|---|---|
| Recreation | One (1) hour per day five (5) days per week | One (1) hour per day five (5) days per week |
| Programs | Program opportunities shall be provided in cell or separate from general population in a secured area. All programs shall be approved by the Director of Programs and Treatment. | Program opportunities shall be provided out of cell, separate from general population in a secured area. All programs shall be approved by the Director of Programs and Treatment. |
| Education | At a minimum, individual education plans shall be maintained for those inmates under the age of 21 who are deemed appropriate by the Education Department. Recommendation for the Education Department shall be accommodated consistent with the security needs of the housing units. | At a minimum, individual education plans shall be maintained for those inmates under the age of 21 who are deemed appropriate by the Education Department. Recommendation for the Education Department shall be accommodated consistent with the security needs of the housing units. |
| Inmate Property | In accordance with storage requirements in AD 6.10, Inmate Property Administrative Segregation Phases II and III.<br><br>Unless on Punitive Segregation status in which case storage requirements in AD 6.10, Inmate Property for Punitive Segregation shall be used. | In accordance with storage requirements in AD 6.10, Inmate Property Administrative Segregation Phases II and III. |
| Commissary | Weekly Spending Limit = $25 | Weekly Spending Limit = $35 |
| Health Services | Health services staff shall tour the unit once per day, seven (7) days per week. | Health services staff shall tour the unit once per day, seven (7) days per week. |
| Mail Retention | May send and receive mail same as general population, but may retain only five (5) letters in cell. | May send and receive mail same as general population, but may retain only five (5) letters in cell. |
| Radio | Not allowed | Walkman allowed. Earplugs must be used. No cassette tapes or compact discs (CDs) allowed in the unit. |
| Television Sets | Not allowed | Not allowed |
| Reading Materials | Shall not exceed the four (4) cubic feet of total allowable property in the cell in accordance with AD 6.10, Inmate Property. Amount may be restricted by the Unit Administrator. | Shall not exceed the four (4) cubic feet of total allowable property in the cell in accordance with AD 6.10, Inmate Property. Amount may be restricted by the Unit Administrator. |
| Telephone Usage | One (1) 15-minute call allowed per week if not on any sanctions prohibiting telephone calls.<br><br>Legal telephone calls:<br><br>1.    All requests from an inmate's attorney for legal telephone calls.<br>2.    Each inmate will be allowed two (2) requested legal telephone calls per month. | Two (2) 15-minute calls allowed per week if not on any sanctions prohibiting telephone calls.<br><br>Legal telephone calls:<br><br>1.    All requests from an inmate's attorney for legal telephone calls.<br>2.    Each inmate will be allowed two (2) requested legal telephone calls per month. |
| Visits | Inmates allowed two (2) 30-minute non-contact visits per week with immediate family members on the approved visiting list only.<br><br>No extended family visits.<br><br>Special visits, to include the inmate's attorney, shall be in accordance with AD 10.6, Inmate Visits. | Inmates allowed two (2) 30-minute non-contact visits per week with immediate family members on the approved visiting list only.<br><br>No extended family visits.<br><br>Special visits, to include the inmate's attorney, shall be in accordance with AD 10.6, Inmate Visits. |

# EXHIBIT D

01/11/2010 13:07 FAX                                    → D C MURPHY        ⌀003/009

 **Request for Exception to an Administrative Directive**
Connecticut Department of Correction

CN 1302
REV 10/28/08

| Administrative Directive Number:  9.4 | Title:    Restrictive Status |
|---|---|

☒    I request approval of the following exception to the above referenced directive (provide detailed explanation):

I request an exception to Section L of Administrative Directive 6.14 (Security Risk Group)

Proposed language for Attachment A of A.D. 9.4:                                    *AND*

Except for any assigned janitors, inmates shall, prior to release from a cell, at a minimum be handcuffed behind the back in leg irons except when making phone calls at which time the inmate shall be handcuffed in the front with leg irons and a tether chain before leaving the cell. Handcuffs may be removed when the inmate is in a secure shower or secure individual recreation area. A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such.

*THE ABOVE LANGUAGE WOULD REPLACE THE LANGUAGE ON ATTACHMENT A*
*OF AD 9.4, RESTRICTIVE STATUS (SEE PAGE 1 - "A.S. PHASE 1" REGARDING*
*MOVEMENT OUT OF CELL OR OUT OF SECURED AREA WHEN ON RESTRAINT STATUS*
*(e.g., ON TIER OR IN DAY SPACE)).*   (m)

☐    Please see attached

**ORIGINATOR**

| Name:    Angel Quiros | Title:    Warden | Date:    1/11/10 |
|---|---|---|
| Signature:    *Angel Quiros* | Facility/Unit:    Northern Correctional Institution | |

**UNIT/DIVISION RECOMMENDATIONS**

| Approved | Denied | | | |
|---|---|---|---|---|
| ☑ | ☐ | Signature of Unit Head: | | Date: 1/11/10. |
| ☑ | ☐ | Signature of Division Head: | | Date: 1-14-10 |

**COMMISSIONER'S DECISION**

This request is:    ☑ Approved    ☐ Denied    Effective date of exception:    1-14-10.

☐    This exception is valid through: _____, by which the exception must be re-requested.

☑    This exception is valid until such time as the Administrative Directive is updated.

☐    This exception shall be added immediately to the Administrative Directive.

| Commissioner's signature: | Date:    1-14-10 |
|---|---|

# EXHIBIT E



# Request for Inclusion or Revision to an Administrative Directive
## Connecticut Department of Correction

CN 1301
REV 10/17/07

| Administrative Directive Number: | 9.4 | Title: | **Restrictive Status** |
|---|---|---|---|

☒ I recommend the following inclusion or revision to the above referenced Administrative Directive (provide detailed explanation):

Recommendation #1. Revise definition of "Restraint Status I" (Section 3(N) of AD 9.4, Restrictive Status) as follows:

**Current language:** "The securing of an inmate with hand cuffs behind the back and leg irons while in Chronic Discipline."

**Proposed language:** "The securing of an inmate with hand cuffs behind the back while in Chronic Discipline. Leg irons and tether chain may be used at the discretion of the Unit Administrator."

Recommendation #2. Revise language of Attachment A (Administrative Segregation – Phase 1) as follows:

Page #1 - Regarding the inmate's movement out of cell or out of secured area within housing unit (e.g., on tier or in day space) – when handcuffing behind the back, the use of leg irons shall no longer be authorized.

Page #1 - Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) – when handcuffing behind the back, the use of leg irons shall no longer be authorized.

Page #1 - Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) – when handcuffing in front, the use of leg irons/tether chain may be used at the discretion of the Unit Administrator.

☒ See attached documents

| ORIGINATOR | | |
|---|---|---|
| Name: **Roger Chartier, Jr.** | Title: **Administrator** | Date: **7/6/2010** |
| Signature: | Facility/Unit: **Office of Standards and Policy** | |

| REVIEW AND DECISION | | |
|---|---|---|

| Approved | Denied | | |
|---|---|---|---|
| ☐ | ☐ | Unit Administrator/Director's signature: | Date: |

Comments:

| Approved | Denied | | |
|---|---|---|---|
| ☒ | ☐ | Division Administrator's signature: | Date: 7-7-10 |

Comments:

| Approved | Denied | | |
|---|---|---|---|
| ☒ | ☐ | Commissioner's signature: | Date: 7-7-10 |

☐ This inclusion/revision shall be added to the Administrative Directive at the next update.

☐ This inclusion/revision shall be added to the Administrative Directive prior to:

☒ This inclusion/revision shall be added immediately to the Administrative Directive.

**From:** James Dzurenda
**To:** Mark Strange
**Date:** 4/19/2010 10:49 AM
**Subject:** Re: MYI Special Management Plan

**CC:** Roger Chartier
Have you received 6.14 and 9.4 from Roger? I had Roger adjust the restraint language in these directives. The new language is consistent to what is in the SM Plan at MYI.

>>> Mark Strange 4/19/2010 9:57 AM >>>
Does this plan violate procedure/policy in AD's ie 6.14 or 9.4 ?

4/20/2010

D/C STRANGE,

YOU'VE ALREADY APPROVED THE AD 6.14 portion
OF THIS REVISION REGARDING RESTRAINTS. ATTACHED
IS THE portion DEALING w/ AD 9.4.
PLEASE REVIEW & COMMENT. THANK YOU.

Roar

MARK REVIEWED on 4/21/2010 &
WAS GOOD W/ REVISIONS.

| Directive Number 9.4 | Effective Date | Page 2 of 17 |
|---|---|---|
| Title | Restrictive Status | |

Administrative Segregation to prepare an inmate for placement back to general population.

C. CC. Correctional Center.

D. Chronic Discipline. A restrictive housing status that results in segregation of an inmate whose behavior, while incarcerated, poses a threat to the security and orderly operation of the facility, or a risk to the safety of staff or other inmates due to repetitive disciplinary infractions.

E. CI. Correctional Institution.

F. DOC. Department of Correction.

G. Facility Hearing Officer. A staff member appointed by the Unit Administrator to conduct hearings to consider classification assignments to Chronic Discipline.

H. Facility Intelligence Coordinator. A staff member appointed by the Unit Administrator to assess all information in any given facility relating to Security Risk Group activity.

I. High Security. A designation which provides for increased supervision of inmates who pose a threat to the safety and security of the facility, staff, inmates or the public.

J. Monitored Movement. The following of an inmate's movement using:

1. Personal visual observation;
2. Visual observation with the aid of video equipment; and/or
3. Communication between staff initiated at the starting point of movement, along the inmate's route of travel and commencing at the authorized destination with the verification of the inmate's arrival.

K. Punitive Segregation. Placement of an inmate on a restrictive housing status that is found guilty of violating the Code of Penal Discipline, as sanctioned in accordance with Administrative Directive 9.5, Code of Penal Discipline.

L. Restraint Status I. The securing of an inmate with hand cuffs behind the back ~~and leg irons~~ while in Chronic Discipline. *Leg irons and tether chain may be used at the discretion of the Unit Administrator.*

M. Restraint Status II. The securing of an inmate with hand cuffs in front while in Chronic Discipline.

N. Restrictive Housing Status. A designation which provides for closely regulated management and separation of an inmate.

O. Restrictive Housing Unit (RHU). An inmate housing unit which is physically separated from other inmate housing where inmates on restrictive housing status, Administrative Detention, or Transfer Detention are placed.

P. Restrictive Status. Restrictive status shall consist of the following categories: Administrative Detention, Punitive Segregation, Transfer Detention, Administrative Segregation, Special Needs Management, Chronic Discipline, High Security, Security Risk Group Affiliation (Close Monitoring), and Security Risk Group Safety Threat Member (Close Custody).

Q. Special Monitoring. A designation which provides for increased supervision and monitoring upon an inmate's completion of a special management program or for reasons of safety and security.

R. Special Needs Management. A placement status for inmates who have demonstrated behavioral qualities either through the serious nature of their crime, behavior, or through reasonable belief that they pose a threat to the safety and security of staff, other inmates, themselves, or the public.

These changes relate directly to Attachment C, though NO changes were made to Attachment C.



# Restrictive Housing Status - Provisions and Management Standards
## Connecticut Department of Correction

Attachment A/1.
REV 3/26/10
AD 9.4

| Function | Punitive Segregation, Administrative Detention, or Transfer Detention | Administrative Segregation (Phase One) | Administrative Segregation Transition (Phase Two) | Administrative Segregation Transition (Phase Three) | Special Needs Management |
|---|---|---|---|---|---|
| **Movement out of cell or out of secured area within housing unit (e.g., on tier or in day space)** | Not more than two (2) inmates out of cell per tier or unit at one time. No restrictive status inmates shall be allowed out of their cells when general population inmates are in the unit. | Not more than six (6) inmates out of cell in the unit at one time. Each inmate, when out of the cell, shall be escorted, at a minimum, on a one (1) staff to one (1) inmate basis and handcuffed behind the back ~~and in leg irons~~. Janitor shall be under direct supervision. | Not more than 16 inmates including janitors at one time. | Not more than 24 inmates and 2 workers at one time. | Not more than 24 inmates and 2 workers at one time. |
| **Movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space)** | The placement of an inmate on out of cell restraint status shall be approved by the Unit Administrator or designee in accordance with AD 6.5, Use of Force. The Unit Administrator shall be notified within 24 hours of any inmate placed on out of cell restraint status. The type of restraint shall be approved by the Unit Administrator or designee in accordance with ADs 6.5, Use of Force and 7.2, Armories. The inmate on restraint status, prior to release from a cell, shall be handcuffed behind the back except when making telephone calls, at which time the inmate shall be handcuffed in the front before leaving the cell.<br><br>Each inmate, on out of cell restraint status, shall be escorted on a one (1) staff, one (1) inmate basis. Continued behavior problems shall result in review for Administrative Segregation placement or transfer to higher security. Where there are secured showers, an inmate on restraint status shall normally have handcuffs removed upon entering and reapplied before leaving the shower. Where there are no secure showers, each inmate on restraint status going to the shower shall be handcuffed in front prior to leaving the cell and remain handcuffed while showering. A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such. | Except for any assigned janitors, inmates shall, prior to release from a cell, at a minimum be handcuffed behind the back ~~and in leg irons~~ except when making phone calls at which time the inmate shall be handcuffed in the front, ~~in leg irons with a tether chain~~ before leaving the cell. *Leg irons and tether chain may be used at the discretion of the Unit Administrator.*<br><br>Handcuffs may be removed when the inmate is in a secure shower or secure individual recreation area.<br><br>A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such. | *For the first 30 days, inmates shall, prior to release from a cell, be handcuffed in front. After 30 days restraints not authorized unless for movement outside the unit or while waiting placement back into Administrative Segregation (Phase 1) or Punitive Segregation at which point the standards set forth under Administrative Segregation (Phase 1) shall apply. A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such.*<br><br>NEW LANGUAGE | Restraints not authorized unless for movement outside the unit or while waiting placement back into Administrative Segregation (Phase 1) or Punitive Segregation at which point the standards set forth under Administrative Segregation (Phase 1) shall apply. | The placement of an inmate on out of cell restraint status shall be approved by the Unit Administrator or designee in accordance with AD 6.5, Use of Force. The Unit Administrator shall be notified within 24 hours of any inmate placed on out of cell restraint status. The type of restraint shall be approved by the Unit Administrator or designee in accordance with ADs 6.5, Use of Force and 7.2, Armories. |

| From: | Roger Chartier |
| To: | District and Unit Administrators |
| Date: | 7/8/2010 11:50 AM |
| Subject: | AD 9.4, Restrictive Status |
| Attachments: | AD 9_4 (2010-07-07) - Revision Notice.pdf |

**CC:**     Maynard, Michele;  Murphy, BrianK;  Strange, Mark
**FYI.** Effective immediately, Commissioner Murphy has authorized the following revision to AD 9.4, Restrictive Status and to Attachment A of AD 9.4:

**Revision to AD 9.4 – Definition of "Restraint Status I" (Section 3(N) has been revised as follows:**

Previous definition: "The securing of an inmate with hand cuffs behind the back and leg irons while in Chronic Discipline."

New definition: "The securing of an inmate with hand cuffs behind the back while in Chronic Discipline. Leg irons and tether chain may be used at the discretion of the Unit Administrator."

**Revision to Attachment A (page 1) – Revised language of Administrative Segregation – Phase 1 as follows:**

Regarding the inmate's movement out of cell or out of secured area within housing unit (e.g., on tier or in day space) - when handcuffing behind the back, the use of leg irons shall no longer be authorized.

Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) - when handcuffing behind the back, the use of leg irons shall no longer be authorized.

Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) - when handcuffing in front, the use of leg irons/tether chain may be used at the discretion of the Unit Administrator.

*AD 9.4, Restrictive Status will be updated to reflect these revisions and will be re-issued with Transmittal Memorandum #124. Attachment A has been revised and posted to the X-Drive.*

*Captain Roger Chartier, Jr.*
*Connecticut Department of Correction*
*Office of Standards and Policy*
*24 Wolcott Hill Road*
*Wethersfield, CT 06109*
*860.692.7485 (Phone)*
*860.692.7483 (Fax)*
*Roger.Chartier@po.state.ct.us*

# EXHIBIT F



# Request for Inclusion or Revision to an
## Administrative Directive
### Connecticut Department of Correction

CN 1301
REV 10/17/07

| Administrative Directive Number: | 9.4 | Title: | Restrictive Status (Attachment A) |
|---|---|---|---|

☒ I recommend the following inclusion or revision to the above referenced Administrative Directive (provide detailed explanation):

*This revision replaces recommendation #2 on the Request for Revision signed by Commissioner Murphy on 7/7/2010. Recommendation #1 on the same Request for Revision remains in effect and is unchanged.*

Revise language of Attachment A (Administrative Segregation – Phase 1) as follows:

Page #1 - Regarding the inmate's movement out of cell or out of secured area within housing unit (e.g., on tier or in day space) – when handcuffing behind the back, the use of leg irons shall no longer be authorized *(leg irons and tether chain may be used at Northern CI, York CI, Garner CI and Manson YI when authorized by the Unit Administrator).*

Page #1 - Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) – when handcuffing behind the back, the use of leg irons shall no longer be authorized *(leg irons and tether chain may be used when authorized by the Unit Administrator).*

Page #1 - Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) – *when handcuffed in the front, leg irons and tether chain may be used at the discretion of the Unit Administrator.*

☒ See attached documents

| ORIGINATOR | | |
|---|---|---|
| Name:  Roger Chartier, Jr. | Title:  Administrator | Date:  7/20/2010 |
| Signature: | Facility/Unit:  Office of Standards and Policy | |

## REVIEW AND DECISION

**Approved    Denied**

| ☐    ☐ | Unit Administrator/Director's signature: | Date: |
|---|---|---|

Comments:

**Approved    Denied**

| ☒    ☐ | Division Administrator's signature: *Acting DIR* | Date: 7/20/10 |
|---|---|---|

Comments:
Concur w/ recommendation

**Approved    Denied**

| ☑    ☐ | Commissioner's signature: | Date: 7·20·10 |
|---|---|---|

☐ This inclusion/revision shall be added to the Administrative Directive at the next update.

☐ This inclusion/revision shall be added to the Administrative Directive prior to: _____

☑ This inclusion/revision shall be added immediately to the Administrative Directive.



# Restrictive Housing Status - Provisions and Management Standards
## Connecticut Department of Correction

Attachment A/1
REV 7/20/10
AD 9.4

| Function | Punitive Segregation, Administrative Detention, or Transfer Detention | Administrative Segregation (Phase One) | Administrative Segregation Transition (Phase Two) | Administrative Segregation Transition (Phase Three) | Special Needs Management |
|---|---|---|---|---|---|
| **Movement out of cell or out of secured area within housing unit (e.g., on tier or in day space)** | Not more than two (2) inmates out of cell per tier or unit at one time. No restrictive status inmates shall be allowed out of their cells when general population inmates are in the unit. | Not more than six (6) inmates out of cell in the unit at one time. Each inmate, when out of the cell, shall be escorted, at a minimum, on a one (1) staff to one (1) inmate basis and handcuffed behind the back ~~and in leg irons~~ *(leg irons and tether chain may be used at Northern CI, York CI, Garner CI and Manson YI when authorized by the Unit Administrator)*. Janitors shall be under direct supervision. | Not more than 16 inmates including janitors at one time. | Not more than 24 inmates and 2 workers at one time. | Not more than 24 inmates and 2 workers at one time. |
| **Movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space)** | The placement of an inmate on out of cell restraint status shall be approved by the Unit Administrator or designee in accordance with AD 6.5, Use of Force. The Unit Administrator shall be notified within 24 hours of any inmate placed on out of cell restraint status. The type of restraint shall be approved by the Unit Administrator or designee in accordance with ADs 6.5, Use of Force and 7.2, Armories. The inmate on restraint status, prior to release from a cell, shall be handcuffed behind the back except when making telephone calls, at which time the inmate shall be handcuffed in the front before leaving the cell.<br><br>Each inmate, on out of cell restraint status, shall be escorted on a one (1) staff, one (1) inmate basis. Continued behavior problems shall result in review for Administrative Segregation placement or transfer to higher security. Where there are secured showers, an inmate on restraint status shall normally have handcuffs removed upon entering and reapplied before leaving the shower. Where there are no secure showers, each inmate on restraint status going to the shower shall be handcuffed in front prior to leaving the cell and remain handcuffed while showering. A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such. | ~~Except for any assigned janitors,~~ Inmates shall, prior to release from a cell, at a minimum be handcuffed behind the back ~~and in leg irons~~ *(leg irons and tether chain may be used when authorized by the Unit Administrator)* except when making phone calls at which time the inmate shall be handcuffed in the front. ~~in leg irons with a tether chain~~ before leaving the cell *(when handcuffed in the front, leg irons and tether chain may be used at the discretion of the Unit Administrator)*.<br><br>Handcuffs may be removed when the inmate is in a secure shower or secure individual recreation area.<br><br>A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such. | For the first 30 days, inmates shall, prior to release from a cell, be handcuffed in front. After 30 days restraints not authorized unless for movement outside the unit or while waiting placement back into Administrative Segregation (Phase 1) or Punitive Segregation at which point the standards set forth under Administrative Segregation (Phase 1) shall apply. A cell may be opened prior to an inmate being handcuffed if, in the best judgment of a supervisor, a health emergency warrants such. | Restraints not authorized unless for movement outside the unit or while waiting placement back into Administrative Segregation (Phase 1) or Punitive Segregation at which point the standards set forth under Administrative Segregation (Phase 1) shall apply. | The placement of an inmate on out of cell restraint status shall be approved by the Unit Administrator or designee in accordance with AD 6.5, Use of Force. The Unit Administrator shall be notified within 24 hours of any inmate placed on out of cell restraint status. The type of restraint shall be approved by the Unit Administrator or designee in accordance with ADs 6.5, Use of Force and 7.2, Armories. |

**From:**      James Dzurenda
**To:**        Roger.Chartier@po.state.ct.us,Michael.Lajoie@po.state.ct.us
**Date:**      7/15/2010 7:03 PM
**Subject:**   Re: Fwd: AD 9.4, Restrictive Status

Yes this should include York, Garner and MYI.

>>> Roger Chartier 07/15/10 8:17 AM >>>
Please review and comment. Would this be limited to Northern CI? What about York, Garner or MYI?
Please advise. Thank you.


Captain Roger Chartier, Jr.
Connecticut Department of Correction
Office of Standards and Policy
24 Wolcott Hill Road
Wethersfield, CT 06109
860.692.7485 (Phone)
860.692.7483 (Fax)
Roger.Chartier@po.state.ct.us



### Request for Inclusion or Revision to an Administrative Directive
**Connecticut Department of Correction**

CN 1301
REV 10/17/07

| Administrative Directive Number: | 9.4 | Title: | **Restrictive Status** |
|---|---|---|---|

☒ I recommend the following inclusion or revision to the above referenced Administrative Directive (provide detailed explanation):

Recommendation #1. Revise definition of "Restraint Status I" (Section 3(N) of AD 9.4, Restrictive Status) as follows:

Current language: "The securing of an inmate with hand cuffs behind the back and leg irons while in Chronic Discipline."

Proposed language: "The securing of an inmate with hand cuffs behind the back while in Chronic Discipline. Leg irons and tether chain may be used at the discretion of the Unit Administrator."

Recommendation #2. Revise language of Attachment A (Administrative Segregation – Phase 1) as follows:

Page #1 - Regarding the inmate's movement out of cell or out of secured area within housing unit (e.g., on tier or in day space) – when handcuffing behind the back, the use of leg irons shall no longer be authorized.

Page #1 - Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) – when handcuffing behind the back, the use of leg irons shall no longer be authorized.

Page #1 - Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) – when handcuffing in front, the use of leg irons/tether chain may be used at the discretion of the Unit Administrator.

☒    See attached documents

| ORIGINATOR | | |
|---|---|---|
| Name: Roger Chartier, Jr. | Title: **Administrator** | Date: 7/6/2010 |
| Signature: _Roger Chartier_ 7/6/2010 | Facility/Unit: **Office of Standards and Policy** | |

**REVIEW AND DECISION**

| Approved | Denied | | |
|---|---|---|---|
| ☐ | ☐ | Unit Administrator/Director's signature: | Date: |

Comments:

| Approved | Denied | | |
|---|---|---|---|
| ☑ | ☐ | Division Administrator's signature: | Date: 7-7-10 |

Comments:

| Approved | Denied | | |
|---|---|---|---|
| ☑ | ☐ | Commissioner's signature: | Date: 7-7-10 |

☐    This inclusion/revision shall be added to the Administrative Directive at the next update.

☐    This inclusion/revision shall be added to the Administrative Directive prior to: _____

☑    This inclusion/revision shall be added immediately to the Administrative Directive.

**From:**          Roger Chartier
**To:**            District and Unit Administrators;  Maynard, Michele
**Date:**          7/21/2010 7:34 AM
**Subject:**       AD 9.4, Restrictive Status (Attachment A - UPDATED)
**Attachments:**   AD 9_4 (2010-07-20) - Revision Notice.pdf

**CC:**            Murphy, BrianK
**FYI.** Effective immediately, Commissioner Murphy has authorized the following revision to Attachment A of AD 9.4, Restrictive Status:

Revision to Attachment A (page 1) - Revised language of Administrative Segregation - Phase 1 as follows:

Regarding the inmate's movement out of cell or out of secured area within housing unit (e.g., on tier or in day space) - when handcuffing behind the back, the use of leg irons shall no longer be authorized *(leg irons and tether chain may be used at Northern CI, York CI, Garner CI and Manson YI when authorized by the Unit Administrator)*. Also deleted first line of section *"Except for any assigned janitors."*

Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) - when handcuffing behind the back, the use of leg irons shall no longer be authorized *(leg irons and tether chain may be used when authorized by the Unit Administrator)*.

Regarding the inmate's movement out of cell or out of secured area when on restraint status (e.g., on tier or in day space) - when handcuffed in the front, leg irons and tether chain may be used at the discretion of the Unit Administrator.

AD 9.4, Restrictive Status will be updated to reflect these revisions and will be re-issued with Transmittal Memorandum #124. Attachment A has been revised and posted to the X-Drive (the current version is now dated 7/20/2010).

Captain Roger Chartier, Jr.
Connecticut Department of Correction
Office of Standards and Policy
24 Wolcott Hill Road
Wethersfield, CT 06109
860.692.7485 (Phone)
860.692.7483 (Fax)
Roger.Chartier@po.state.ct.us

Message Id:    4C46A316.2A6 : 68 : 10853
Subject:       AD 9.4, Restrictive Status (Attachment A - UPDATED)
Created By:    Roger.Chartier@po.state.ct.us
Scheduled Date:
Creation Date:  7/21/2010 7:34 AM
From:         Roger Chartier

## Recipients

| Recipient | Action | Date & Time | Comment |
|---|---|---|---|
| PO_BPT.DOM_S | Delivered | 7/21/2010 7:35 AM | |
| CC: Katrien White (WhiteK2) | Read | 7/21/2010 8:22 AM | |
| To: Walter Ford (FordW1) | Read | 7/21/2010 3:05 PM | |
| PO_BRK.DOM_E | Delivered | 7/21/2010 7:35 AM | |
| CC: Kelley Rochefort (RochefoK) | Read | 7/21/2010 7:36 AM | |
| To: Valerie Light (LightV) | Read | 7/21/2010 9:27 AM | |
| PO_CHS.DOM_S | Delivered | 7/21/2010 7:35 AM | |
| To: John Alves (AlvesJ) | Read | 7/21/2010 8:32 AM | |
| CC: Linda Harper (HarperL) | Read | 7/21/2010 9:02 AM | |
| PO_CO1.DOM_CO | Delivered | 7/21/2010 7:34 AM | |
| CC: BrianK Murphy (MurphyB) | Read | 7/21/2010 10:49 AM | |
| To: James Dzurenda (DzurendJ) | | | |
| CC: Joanne McIntosh (McIntosJ) | Read | 7/23/2010 3:11 PM | |
| CC: Maria Meehan (Meehan) | Read | 7/21/2010 7:39 AM | |
| To: Michael Lajoie (LajoieM) | Read | 7/21/2010 1:08 PM | |
| CC: Nancy Bard (BardN) | Read | 7/21/2010 8:25 AM | |
| PO_COR.DOM_E | Delivered | 7/21/2010 7:35 AM | |
| CC: Lynette Joseph (JosephL) | Read | 7/21/2010 8:06 AM | |
| To: Scott Erfe (ErfeS) | Read | 7/21/2010 2:41 PM | |
| PO_ENF.DOM_N | Delivered | 7/21/2010 7:35 AM | |
| To: Anne Cournoyer (CournoyA) | Read | 7/21/2010 8:58 AM | |
| CC: Flabia Feo (feof) | Read | 7/21/2010 7:53 AM | |
| PO_GAR.DOM_S | Delivered | 7/21/2010 7:35 AM | |
| CC: Aleshia Hall (HallA) | Read | 7/21/2010 9:14 AM | |
| To: Scott Semple (SempleS) | Read | 7/21/2010 10:05 AM | |
| PO_GAT.DOM_S | Delivered | 7/21/2010 7:35 AM | |
| To: Cecelia Rodrequez (RodrequC) | Read | 7/21/2010 7:41 AM | |
| To: John Tarascio (TarasciJ) | Read | 7/21/2010 10:29 AM | |
| PO_HFD.DOM_N | Delivered | 7/21/2010 7:35 AM | |
| CC: Connie Bancroft (BancrofC) | Read | 7/21/2010 7:54 AM | |
| To: Edward Maldonado (MaldonaE) | Read | 7/21/2010 8:02 AM | |
| PO_MAN.DOM_S | Delivered | 7/21/2010 7:35 AM | |
| To: Jose Feliciano (FeliciaJ) | Read | 7/21/2010 7:55 AM | |
| To: Michele Maynard (MaynardM) | Read | 7/21/2010 10:30 AM | |
| CC: Ramona Saturno (SaturnoR) | Read | 7/21/2010 10:00 AM | |
| PO_NHV.DOM_S | Delivered | 7/21/2010 7:35 AM | |
| CC: Betty Jane Marshall (MarshalB) | Read | 7/21/2010 9:52 AM | |
| To: Jon Brighthaupt (BrighthJ) | Read | 7/21/2010 9:23 AM | |
| PO_NRN.DOM_N | Delivered | 7/21/2010 7:35 AM | |
| To: Angel Quiros (QuirosA) | Read | 7/21/2010 9:28 AM | |

| | | |
|---|---|---|
| CC: Kathy Garner (GarnerK) | Read | 7/21/2010 1:44 PM |
| 📧 PO_NST.DOM_E | Delivered | 7/21/2010 7:35 AM |
| CC: Laura Olsen (OlsenL) | Read | 7/21/2010 8:12 AM |
| To: Monica Rinaldi (RinaldM1) | Read | 7/21/2010 1:13 PM |
| CC: Vikki Deary (DearyV) | Read | 7/21/2010 8:51 AM |
| 📧 PO_OSB.DOM_N | Delivered | 7/21/2010 7:35 AM |
| To: Carol Chapdelaine (ChapdelC) | Read | 7/21/2010 12:25 PM |
| CC: Nancy Spanswick (SpanswiN) | Read | 7/21/2010 9:15 AM |
| 📧 PO_ROB.DOM_N | Delivered | 7/21/2010 7:34 AM |
| To: Christine Whidden (WhiddenC) | Read | 7/21/2010 9:25 AM |
| CC: Yoke Twarosch (TwaroscY) | Read | 7/21/2010 7:41 AM |
| 📧 PO_WIL.DOM_N | Delivered | 7/21/2010 7:35 AM |
| To: Esther Torres (TorresE1) | Read | 7/21/2010 8:45 AM |
| CC: Susan Grucci (GrucciS) | Read | 7/21/2010 9:16 AM |
| 📧 PO_WLK.DOM_N | Delivered | 7/21/2010 7:34 AM |
| To: Peter Murphy (MurphyP) | Read | 7/21/2010 10:46 AM |
| 📧 PO_YRK.DOM_E | Delivered | 7/21/2010 7:35 AM |
| To: Kevin Gause (GauseK) | Read | 7/21/2010 7:58 AM |
| CC: Neena Beckwith (BeckwitN) | Read | 7/21/2010 7:50 AM |

## Post Offices

| Post Office | Delivered | Route |
|---|---|---|
| PO_BPT.DOM_S | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_BRK.DOM_E | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_CHS.DOM_S | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_CO1.DOM_CO | 7/21/2010 7:34 AM | po.state.ct.us |
| PO_COR.DOM_E | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_ENF.DOM_N | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_GAR.DOM_S | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_GAT.DOM_S | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_HFD.DOM_N | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_MAN.DOM_S | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_NHV.DOM_S | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_NRN.DOM_N | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_NST.DOM_E | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_OSB.DOM_N | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_ROB.DOM_N | 7/21/2010 7:34 AM | po.state.ct.us |
| PO_WIL.DOM_N | 7/21/2010 7:35 AM | po.state.ct.us |
| PO_WLK.DOM_N | 7/21/2010 7:34 AM | po.state.ct.us |
| PO_YRK.DOM_E | 7/21/2010 7:35 AM | po.state.ct.us |

## Files

| File | Size | Date & Time |
|---|---|---|
| AD 9_4 (2010-07-20) - Revision Notice.pdf | 269229 | 7/21/2010 7:22 AM |
| MESSAGE | 2909 | 7/21/2010 7:34 AM |

## Options

| | |
|---|---|
| Auto Delete: | No |
| Concealed Subject: | No |
| Expiration Date: | None |
| Notify Recipients: | Yes |
| Priority: | Standard |

**Reply requested by**    None
**Security:**    Standard
**To Be Delivered:**    Immediate